CASE 59—ORDINARY—DECEMBER 9.

# Johnson v. The Auditor.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. Section 1, article 2, chapter 108, General Statutes, which provides: that "no money shall be paid to any person, . . . when such person, or his assignor, is owing the Commonwealth," &c., has reference to public debtors with whom the Commonwealth has accounts, and not to those who, without fault of their own, have become indebted to the State as sureties.

2. It does not apply to a jailer who, before his election, became indebted to the Commonwealth as surety for a defaulting sheriff.

3. A debt due to the Commonwealth by a defaulting sheriff is not released by his discharge in bankruptcy.

W. LINDSAY FOR APPELLANT.

1. Appellant insists that his discharge in bankruptcy binds the state as well as individuals. (Section 33, Bankrupt Act, p. 533, vol. 14, U. S. Stat. at Large; Ibid, sec. 34; 3 McLean Ct. Ct. Rep., 485; 10 Penn., 466; 10 Grattan, 494; 8 Bankrupt Reg., 309; 13 Ib., 235; 28 Ark., 118.)

2. Public policy forbids that section 6, article 2, chapter 108, Gen. Statutes, shall be so construed as to apply to jailers. (Webb v. McCauley, 4 Bush, 8.)

Johnson v. The Auditor.

P. W. HARDIN, ATTORNEY GENÉRAL, FOR APPELLEE.

The certificate of bankruptcy does not include liability as surety for a. public officer. (9 Bankrupt Reg., 536; Ib., 191; Commonwealth v. Cook, MS. Opin., 1871.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

Appellant, jailer of Henderson county, applied for a. mandamus to compel the Auditor to pay him the sum of seventy-six dollars, allowed by the common pleas court for attendance upon the court and for fuel furnished. The court: refused to grant the application, and to reverse that ruling the case is brought to this court.

Prior to the election of appellant as jailer he was surety on the revenue bond of the sheriff of Henderson county, who failed to account for the revenue tax with which he was chargeable. For this breach of the bond judgment was. rendered in favor of the Commonwealth against the sheriff and appellant as surety, which judgment, to an amount. larger than the claim presented here, remains unsatisfied.

The Auditor justifies his refusal to draw his warrant under section 6, article 2, chapter 108, of the General Statutes, which is as follows:

"No money shall be paid to any person in his own right, or as assignee of another, when such person or his assignor is owing the Commonwealth; and such claims, when presented, shall be liquidated and settled by a credit for the amount thereof upon the accounts of the public debtor, so far as may be required to pay the amount; and for any balance due after settling the whole demand of the Commonwealth, payment may be made."

This statute appears to have been intended to apply to "public debtors" whose duty it is to collect and pay over funds to the Commonwealth, and who have failed to dis-

charge the trust; and not to those persons who, without any fault of their own, have become indebted as sureties for defaulting officers. The language — "such claims, when presented, shall be liquidated and settled by a credit for the amount thereof upon the accounts of the public debtor"— clearly imports a reference to such persons as the Commonwealth has "accounts" with, and not to such as the Commonwealth may happen to have a claim against by reason of the default of another.

The law makes it the duty of the jailer to furnish food and bedding for the prisoners in his charge, to attend upon the court and to supply fuel for the use of the court, and for these services the statute provides he shall be paid out of the state treasury, and that it shall be the duty of the Auditor to draw his warrant in payment of such claims as come to him properly allowed and properly certified. The greater part of the claims of jailers is ordinarily in the nature of advances made on the faith of the promise of the state to repay, and to that extent he stands somewhat in the relation of a disbursing agent who is required to pay out money for the state before he receives it.

The construction insisted upon by the Auditor could not have been contemplated by the framers of the law. It would interfere with the proper administration of justice in the courts; it would endanger the health and lives, as well as the safety, of prisoners held in custody by the state. The jailer may be fined for not performing these duties imposed upon him by the law, but it was not contemplated that he should be removed from office on account of such dereliction when it results from the failure of the state to furnish the means with which to perform the duties. The effect would be to punish the misfortune of poverty by exclusion from

office and to place the office of jailer exclusively in the hands of such persons as have sufficient means to discharge all indebtedness to the state, no matter how resulting, and to make the advances necessary to feed the prisoners, furnish fuel, &c. Such a construction, so foreign to the spirit of the law and so repugnant to the dictates of humanity, could not have been contemplated and will not be applied.

We do not undertake to say how far, if at all, such a construction as we here adopt would apply to any other officer of the Commonwealth. It will be time enough to pass upon that matter when properly presented for our consideration.

Subsequent to the rendition of the judgment against appellant in favor of the Commonwealth, he was discharged in bankruptcy, and pleads that discharge in satisfaction of the claim of the state against him.

We are of the opinion that the bankrupt law does not, in terms, apply to any debt due either to the state or to the general government.

The recognized rule is that the authority of the sovereign is not bound by the words of a statute, unless named therein, if the statute tends to restrain or diminish the powers, rights, or interest of the sovereign.

It was held in United States v. Herron (20 Wallace) that the bankrupt law did not apply to claims due the general government.

It was held in Commonwealth v. Hutchinson (10 Pa. St.) and in Saunders v. Commonwealth (10 Grattan) that the bankrupt law of 1841, which is similar in this respect to the act of 1867, did not apply to claims due the state.

The power conferred upon Congress by the Constitution to pass uniform laws in reference to bankruptcy does not confer the power to interfere between the state and its debtor.

-Such an authority, if it existed, could be exercised in such a manner as to destroy the sovereignty of the state—to interfere with the collection of its revenues, the administration of justice in the courts, to prevent the preservation of the public peace, and to destroy the whole machinery of the state government.

The only case to which our attention has been called in which the contrary view is expressed is the case of Jones v. The State (28 Ark.), decided in 1873. There the court held that the surety on a bail bond was released by his discharge in bankruptcy, but there is no discussion of the question by the court, nor does the question as to the power of Congress to pass such a law appear to have been suggested or considered.

The debt due by appellant to the Commonwealth is not released by the discharge in bankruptcy, but cannot be used to set off these claims.

Judgment reversed, and cause remanded, with directions for further proceedings consistent with the opinion.