## In re HOUSTON.

(District Court, D. Kentucky. May 13, 1899.)

1. BANKRUPTCY—PROVABLE DEBTS—ALIMONY.

A judgment in divorce proceedings requiring the defendant to pay alimony to the plaintiff in fixed weekly installments is a provable debt against the defendant's estate in bankruptcy, as to any installments due at the date of adjudication, and will be released by the discharge of the bankrupt.

2. SAME—ARREST OF BANKRUPT FOR CONTEMPT OF STATE COURT—RELEASE ON HABEAS CORPUS.

Where, in a divorce proceeding in a state court, a judgment has been rendered requiring the defendant to pay alimony to the plaintiff in fixed installments, and thereafter the defendant is adjudged bankrupt, and the court of bankruptcy, on his motion, issues an injunction staying all further proceedings in the state court to enforce the payment of installments of alimony already due, the state court cannot lawfully cause the bankrupt to be arrested and imprisoned for a contempt of its authority in omitting to pay such installments; and, if so arrested and committed by order of the state court, the bankrupt will be released on habeas corpus by the court of bankruptcy.

On Habeas Corpus.

R. D. Hill, U. S. Atty., Chas. S. Furber, and Herbert Jackson, for petitioner.

Theo. F. Hallam, for respondent.

EVANS, District Judge. The petitioner is brought before the court by the respondent, who is the jailer of Campbell county, Ky., in obedience to the writ of habeas corpus issued yesterday upon a properly verified petition showing that on the 3d day of May, 1899, he was, on his own petition, duly adjudged a bankrupt by the district court of the United States for the district of Kentucky; that previously thereto, namely, on the 14th day of January, 1899, his wife, Pattie W. Houston, had obtained a divorce from him by the judgment of the Campbell circuit court, and that in the proceedings therefor, and before the said adjudication in bankruptcy, the said circuit court had given judgment against him for alimony, to be thereafter paid in weekly installments of five dollars each; that this judgment for alimony was included in the schedule of the bankrupt's liabilities, and that several installments thereof were past due; that on the 9th day of May, 1899, he had applied for and obtained an order in the bankruptcy court staying and enjoining all proceedings in said action in the state court to enforce the collection of the installments of alimony then past due; that notice of said order and injunction staying said proceedings was given and was served upon the judge of said circuit court, but that notwithstanding such order and injunction, and notice thereof, the petitioner had been proceeded against by process of contempt in said state court, and, because he had not paid said installments, he was, by the judgment of said state court, on the 11th day of May, 1899, committed to and imprisoned in the county jail of said county, in violation of the laws of the United States and of his rights thereunder, and in defiance of the orders of the bankruptcy court staying said proceedings. The respondent, the jailer, without filing a written response, in open court orally agreed that the facts were as have been stated, and filed copies of the judgments of the Campbell circuit court allowing said alimony, and ordering the imprisonment of the petitioner for its nonpayment, and presented these orders as the justification of the said imprisonment.

Upon this state of facts, the case seems to the court to be a plain one. The constitution of the United States provides that that instrument, and the laws made in pursuance thereof, shall be the supreme law of the land, anything in the constitution or laws of any state to the contrary notwithstanding. Const. Amend. art. 6, subd. 2. Among the powers so delegated to the congress is that authorizing it to pass a general bankrupt law. Pursuant to such power, the existing bankruptcy act (30 Stat. 544) became the supreme and only law of the land upon that subject. Under its provisions the petitioner applied for its benefits, and was duly adjudicated a bankrupt. Among those benefits was that of claiming a discharge from all liabilities of every character which by the terms of the bankrupt law were provable debts against his estate, with certain exceptions specified in the act. Section 1 of the act provides that the word "debt" shall include any debt, demand, or claim provable in bank-

ruptcy, and also that the word "discharge" shall mean the release of a bankrupt from all of his debts which are provable in bankruptcy, subject to the exceptions named in the act. Whether wisely or unwisely, congress did not, in fact, in section 63, distinguish between judgments for alimony and other judgments, when including them in the list of provable debts; nor did it, in section 17, include judgments of that class among those not to be affected by a discharge in bankruptcy. The bankrupt court in this case had so decided on the motion for a stay of proceedings, and had directly passed upon the question in holding that a stay should be ordered. While, in making the order for a stay of proceedings, the court only looked at the question from the standpoint of the past-due installments of alimony, it is strongly inclined to the opinion that the peculiar form of judgment by which alimony is usually allowed may be properly classed among the unliquidated demands of the bankrupt, to be liquidated and made certain in amount pursuant to section 63 of the act; and, if the state law gave it priority, such judgments could be allowed a preference of payment out of the assets. And it should not be overlooked that the court of appeals of Kentucky, in the case of Tyler v. Tyler, 99 Ky., at page 34, 34 S. W. 899, in speaking of a judgment against the husband for alimony, said that it "makes him an ordinary debtor to the wife for a fixed sum of money, that his estate is liable for in the same manner that it would be for a debt due upon any contract." But whether the judgment be a fixed liability or a contingent one is immaterial in this case, because all these questions must be settled and disposed of in the bankruptcy court alone; and, while the judgment of the court thereon may be erroneous, it is not void, nor, so long as it remains unreversed, is it to be disregarded by the state court. Whether the liability be fixed or contingent, section 11 of the act authorizes the court to stay proceedings in all suits founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of filing the petition; and section 2, cl. 13, gives the bankrupt court power to enforce obedience by all persons to all its lawful orders by fine and imprisonment. The court attaches no importance to the words, "the filing of the petition against him," used in section 63 of the bankruptcy law, because it is the evident intention of the act that the debts described in that section shall be provable against a voluntary bankrupt as well as an involuntary bankrupt, and because the court, from his knowledge of the history of the act, is satisfied that these words were inadvertently left in the draft of the bill after the adjustment of the controversy between the two houses of congress over the question of whether there should be any clause of involuntary bankruptcy. Any other construction of section 63 would exclude altogether the idea that there were provable debts against a voluntary bankrupt. And, besides, the matter is concluded by the very first sentence of the first section of the bankrupt act, which provides that the phrase " 'a person against whom a petition has been filed' shall include a person who has filed a voluntary petition."

In view of what has been stated, there does not seem to be any doubt of the accuracy of any one of the following propositions:

(1) That the authority of the bankrupt court was meant, alike by the constitution and by congress, to be supreme and exclusive, within the sphere of the powers conferred. (2) That this necessarily excludes the idea of any co-ordinate jurisdiction in the state court in questions like the one upon which this case must turn. (3) That no rule of comity can apply or be allowed to operate in such cases, because the sole jurisdiction is, by the exercise of the congressional power to pass a general bankrupt law, vested in the bankrupt court alone, and it has no authority to delegate that power, and no right to abandon it, to any other tribunal.

Coming, then, to the question in issue here, we find that a state court, in defiance of the propositions laid down, and of the order staying its proceedings lawfully made by the bankrupt court, has assumed the power, while bankruptcy proceedings are pending, to commit a bankrupt to jail for omitting to pay certain installments of alimony due under the judgment of the state court rendered before the adjudication in bankruptcy, and from which he might be discharged in the bankruptcy proceedings. This seems to the court to bring the case plainly within the provisions of section 753 of the Revised Statutes of the United States, which manifestly includes cases of this character, as well as the more general one where the imprisonment is in violation of the constitution and laws of the United States. The justification of the proceeding of the state court attempted in the argument was that the commitment of the petitioner to jail was for a mere contempt of that court, in the petitioner's refusal to obey an order of that court made for the benefit of the little children of the bankrupt; it being, as was insisted, the strongest moral and natural duty of the father to provide for them. This court has no power over the mere moral and natural duties of a father, and has no power to enforce them, as such; nor must it be influenced by pathetic fringes that may be put upon the argument respecting those duties. True, the court knows no higher duty than the one alluded to, though the moral obligation to pay every honest debt is perhaps not less strong; but the bankrupt law was intended to operate to the dissolution of the mere legal liability to pay all dischargeable debts, and the court must limit its consideration of the case to that phase of it. Of course, it is clear that a person who has been adjudicated a bankrupt may commit certain contempts against a state court, with which this court would have no power to interfere,—such, for example, as a positive indignity offered to that court in its presence, and, indeed, in a great variety of other ways; but it was held by Judge Bond, in the Electoral College Case, 8 Fed. Cas. 427, that this court can look behind the return of the officer and the commitment, and examine into the real cause of the detention. In that case it was also held that it is competent for a federal court to issue the writ of habeas corpus in favor of petitioners imprisoned for contempt by a state court, where the acts of alleged contempt were committed in the performance of duties created by the constitution and laws of the United States, in which event the petitioners are under the protection of the laws and of the constitution, and, furthermore, that where it clearly appears from the record that

the state court exceeded its powers in committing the petitioner, it is competent for a federal court to release and discharge him from imprisonment. If it be within the power of this court to release where the imprisonment is the result of the performance of duties created by the constitution and laws of the United States, it cannot be less so where the imprisonment is the result of the exercise by the petitioner of the rights conferred upon him by the constitution and laws of the United States. In this case the prisoner was exercising his right, under the bankruptcy law, and under the proceedings of the bankruptcy court, to refrain from paying an indebtedness which was provable against his estate, and from which he might be discharged in the bankruptcy proceedings. Upon further examination into the real cause of the detention, which it is certainly the duty of this court to make in this case, it clearly appears that the imprisonment of the petitioner was for no other contempt than that which consisted of his omitting to pay the judgment for alimony; that he stated at the time that he had no money to do it with, and afterwards stood mute; that he was committed for this failure to pay, and for no other cause whatever; and this was all done after the state court had full notice of the order issued by the bankruptcy court staying further proceedings in the case in the state court. If the state court, under such a state of facts, and under the guise and pretense of contempt proceedings for disobedience of an unlawful order, can enforce the payment of this character of provable debts, it may also enforce the payment of other forms of judgment or debts by a similar ruling, and thus, through the assumed power of punishing for contempt, render the bankruptcy act entirely nugatory. It cannot for a moment be admitted that the bankruptcy enactment of congress can be evaded or disregarded by any such means, or that this court is impotent to prevent it.

The court has by no means been unmindful of the delicacy of the questions involved in this case, nor of the comity which should always exist between the state and federal tribunals. That comity, particularly in matters where jurisdiction is co-ordinate, should be cheerfully recognized, and will always be, by this court, in every proper case; but the supremacy of the laws of the United States in cases where, as in bankruptcy matters, their operations are exclusive, would be but the imagination of a vain thing, if that supremacy could either be disregarded by the state courts or abdicated by the federal tribunals. It is as much the duty of the state courts as of the federal courts to recognize the supremacy of the laws of the United States, and yield thereto. It is a matter of congratulation that the instances are rare indeed where there is not only a recognition of this supremacy, but the most cheerful acquiescence therein,—an acquiescence as readily made in that case as it always is in that other class of cases where subordinate tribunals yield to the powers of those having jurisdiction to revise their judgments. The action of the state court in this instance has been the source of as much surprise as regret to this court; but the duty of this court is plain, and it must not hesitate to discharge that duty, and, if need be, even though most reluctantly, to put in operation all the powers which the laws

give to prevent or punish any obstruction of the justice of the United States, or any interference with the due execution of the orders, processes, and writs of the courts of the United States.

In the opinion of the court, the commitment of the petitioner in this case was made by the state court in violation of the petitioner's rights under the constitution and laws of the United States; that the state court, in making said commitment, was not in fact punishing, nor attempting to punish, the petitioner for any contempt of its rightful authority, but was acting without lawful power or jurisdiction to imprison the petitioner. Upon these grounds the court holds that the response of the jailer of Campbell county is insufficient, and that the petitioner is wrongfully restrained of his liberty. It results, therefore, that the petitioner must be discharged from custody, and it is so ordered.