## In re BAKER.

(District Court, D. Kansas, First Division. September 9, 1899.)

1. BANKRUPTCY—ARREST OF BANKRUPT ON STATE PROCESS—RELEASE ON HABEAS CORPUS.

   Where a bankrupt, having been arrested on civil process issuing from a state court, applies to a court of bankruptcy to be discharged from such arrest on habeas corpus, he cannot be released if the debt or claim on which the process issued is one which would not be affected by his discharge in bankruptcy. Although general order No. 30 authorizes his release if the debt or claim is one provable in bankruptcy, yet this rule must yield to the more restricted provisions of section 9 of the act, which regulates the subject.

2. SAME.

   A judgment in a bastardy proceeding brought against the putative father in the name of the state, and by the public prosecutor, according to the state law, adjudging him to pay a certain monthly sum to the mother of the child for its maintenance and education for the period of 10 years, and to secure such payment by a bond with sureties, is not such a debt as will be released by his discharge in bankruptcy; and hence, if he is arrested, during the bankruptcy proceedings, for failure to furnish the bond required, and committed, the court of bankruptcy will not set him at liberty on habeas corpus.

In Bankruptcy. On bankrupt's application for writ of habeas corpus.

W. F. Riggs, for petitioner.

E. A. Enright and L. W. Keplinger, opposed.

HOOK, District Judge. This is an application for a writ of habeas corpus. On January 28, 1899, the petitioner was found to be the father of a bastard child by the judgment of the district court of Wyandotte county, Kan., in an action brought in the name of the state on the relation of Birdie Dysart, the mother of the child. By the judgment, Baker was charged with the maintenance and education of the child, and for that purpose he was required to pay to the mother the sum of $10 per month for the period of 10 years, and to secure such payment by a bond with sufficient sure-

ties. In default of bond he was adjudged to be committed to the county jail of Wyandotte county. On July 8, 1899, Baker filed his petition in bankruptcy in this court. He scheduled two items of indebtedness,—one to Ella A. Baker in the amount of $100, and the other the judgment referred to, which he specified as an indebtedness to the mother of the illegitimate child. No assets were listed except a small amount of exempt property. On the 10th of July, 1899, the petitioner was duly adjudged to be a bankrupt. At the time fixed for the meeting of creditors to prove their claims no one appeared, and no claims were proven against the bankrupt's estate. Having neglected to give the bond required by the state court in the bastardy proceeding, Baker was confined by the sheriff in the county jail of Wyandotte county, Kan. To relieve himself of such confinement, this petition is filed.

Sections 752 and 753 of the Revised Statutes authorize the granting of the writ of habeas corpus where the prisoner in jail is in custody in violation of the constitution or of a law of the United States. General order in bankruptcy No. 30 (32 C. C. A. xxx., 89 Fed. xii.) supplements the statute, and, among other things, provides that:

 the petitioner during the pendency of the proceedings in bankruptcy be arrested or imprisoned upon process in any civil action, the district court upon his application may issue a writ of habeas corpus to bring him before the court to ascertain whether such process has been issued for the collection of any claim provable in bankruptcy and if so provable he shall be discharged; if not, he shall be remanded to the custody in which he may lawfully be."

Section 9 of the bankrupt act, in providing for the exemption of the bankrupt from arrest upon civil process, makes an exemption when the process is "issued from a state court having jurisdiction, and served within such state, upon a debt or claim from which his discharge in bankruptcy would not be a release." It will be observed that the language of the order is more comprehensive than the terms of the statute. The former provides for the bankrupt's release upon habeas corpus if the arrest or imprisonment complained of is upon a claim provable in bankruptcy, while section 9 of the act permits of his arrest if it is based upon a debt or claim from which his discharge in bankruptcy would not be a release. A similar variance in phraseology existed between section 26 of the bankrupt act of 1867 and No. 27 of the general orders made in pursuance of that act. The concluding clause of section 26 of the act of 1867 is as follows:

"No bankrupt shall be liable to arrest during the pendency of the proceedings in bankruptcy in any civil action, unless the same is founded on some debt or claim from which his discharge in bankruptcy would not release him." 14 Stat. 529.

General order No. 30 under the act of 1898, and No. 27 under the act of 1867, are identical, excepting in a single instance, where the word "referee" in the former replaces the word "register" in the latter. The order must yield to the terms of the statute, and the test of the legality of the bankrupt's imprisonment is not whether the claim or demand upon which it is based is provable against the bankrupt's estate, but it is whether his discharge in bankruptcy

would operate as a release of the claim or demand. The decisions of the courts under the act of 1867 fully sustain this view. In re Robinson, 6 Blatchf. 253, Fed. Cas. No. 11,939; In re Patterson, 2 Ben. 155, Fed. Cas. No. 10,817; In re Whitehouse, 1 Low. 429, Fed. Cas. No. 17,564. Various kinds of demands are provable in bankruptcy, yet the bankrupt's discharge does not operate to release him from further liability thereon. In the petitioner's case it may be said that, even if the judgment rendered against him in the state court were provable against his estate,—though this is not at all clear,—the important question still remains whether his discharge in bankruptcy would operate as a release of the judgment. If it would, he should be discharged from imprisonment; if not, he should be left in the custody of the sheriff of Wyandotte county. Section 17 of the act of 1898 provides that a discharge in bankruptcy shall release a bankrupt from all his provable debts excepting those falling within certain classes therein enumerated. However, as the result of the interpretation of the different bankrupt laws by the courts, and the ascertainment of the intent and purpose of congress in their enactment, various other claims and judgments than those specifically enumerated therein have been determined to be not affected, nor the liability of the bankrupt thereon impaired or released, by his discharge in bankruptcy. Some demands, although in the form of judgments, are held not to be debts within the meaning of that term as used in the acts; and others, though within the letter, are held not to be within the spirit, of those laws. Thus, under the act of 1867 a judgment for a fine was held not to be a debt provable in bankruptcy. The word "debt," as found in the act, was used in its legal or limited sense, and not in its popular and enlarged signification. In Re Sutherland, Deady, 416, Fed. Cas. No. 13,639, the court said that to place such an obligation in the class of ordinary debts affected by the bankrupt law would, in effect, be allowing the national government, through its courts, to grant pardons for crimes committed against the state, and that such result was certainly not in contemplation when the act was passed. The same conclusion was reached by the supreme court in Spalding v. New York, 4 How. 21, affirming 7 Hill, 301, 10 Paige, 284. To the same effect is Macy v. Jordan, 2 Denio, 570. A debt due to the United States is not released by a discharge of the debtor in bankruptcy unless the bankrupt act expressly and specifically so provides. The leading case upon this subject is U. S. v. Herron, 20 Wall. 251, where it is held that the act of 1867, which provides in general terms that the certificate should release the bankrupt "from all debts, claims, liability, and demands which were or might have been proved against his estate in bankruptcy," did not affect a claim due to the United States, although it might prove its debt, and secure priority of other creditors. The supreme court announced the broad doctrine to be that no general words in a statute devested the government of its rights or remedies. It is familiar doctrine in England that where an act of parliament is general, and thereby any prerogative, right, title, or interest is devested or taken from the king, he shall not be bound thereby unless there are express

words extending the provisions of the statute to him. Thus it is held that the ordinary statutes of limitation do not apply to the government unless made so by express terms, and it has frequently been decided that debts due the crown are not released by a discharge in bankruptcy under the English bankrupt acts. It is said that "the most general words that can be devised" do not affect the king in the least, if they may tend to restrain or diminish any of his rights and interests. Magdalen College Case, 11 Coke, 74. And the supreme court, in Dollar Sav. Bank v. U. S., 19 Wall. 239, holds that "the rule thus settled respecting the British crown is equally applicable to this government, and it has been applied frequently in the different states, and practically in the federal courts." Various state courts have held that this exemption from general terms of legislative enactments applies to the states not only in their united. but also in their separate. sovereignties, and that the claims of a state are not within provisions for the release of debts owing by the bankrupt upon his discharge in bankruptcy unless expressly made so. The legislature will not be taken to have postponed the public right to that of an individual except in cases where such purpose has been most plainly manifested. Com. v. Hutchinson, 10 Pa. St. 466; Saunders v. Com., 10 Grat. 494; Connecticut v. Shelton,. 47 Conn. 400; Johnson v. Auditor, 78 Ky. 282. So far as concerns this question, there are two points of difference between the act of 1867 and the one now in force. Section 57, cl. "j," of the present act provides that debts owing to the United States, or a state, or some subdivision thereof, as a penalty or forfeiture, shall not be provable except for the amount of the pecuniary loss sustained, with costs and interest. No such provision appears in the act of 1867. Section 17 of the present act exempts from release of provable debts such as are due as a tax levied by the United States, the state, or some subdivision thereof. Language of the same import appears in the act of 1867, but it is not found in the section relating to release of the bankrupt's debts. These differences are insufficient to indicate an express intention on the part of congress in the passage of the present act to establish a different rule as to the devesting of the government, national or state. of its rights or remedies from that which obtained under the act of 1867 as construed by the supreme court in U. S. v. Herron, supra. If congress had intended that the bankrupt's discharge should operate as a release of his debts owing to the government, it would undoubtedly have so provided in unmistakable terms, especially in view of the rule of construction which has been established and so uniformly followed for so many years.

It has been held that a judgment for alimony is not released by a discharge in bankruptcy. In re Lachemeyer, 18 N. B. R. 270, Fed. Cas. No. 7,966; In re Foye, 2 Low. 399, Fed. Cas. No. 5,021. The contrary is held in Re Houston, 94 Fed. 119. Whatever may be the correct rule respecting an award of alimony, it is not governed by the same principles that apply to a judgment in a bastardy proceeding, which, in Kansas, is substantially a prosecution brought in the name of the state, and carried on by the public prosecutor, for the

enforcement of a police regulation. The history and legislation on this subject shows that the object and purpose of such acts as the one under which the petitioner was prosecuted is to protect the public from the responsibility and burden that would be cast upon it by the criminal act of the putative father, and to relieve society of the cost of the maintenance and education of the illegitimate offspring. In some states the complaint is brought by the overseers of the poor or other officials intrusted with the administration of the laws relating to persons whose maintenance is or may become a charge upon the public. In some states the prosecution is instituted in the name of the town liable for the maintenance of the child; in others by the town where the mother and child have procured a settlement, in case the mother shall refuse to prosecute; in others in the name of the people, or, as in Kansas, in the name of the state. In some jurisdictions the complaint is brought in the name of the people, or state, or some subordinate division thereof, on the relation of the mother as prosecuting witness, while in others the mother has no record connection with the proceedings, unless it be in the capacity of a witness. In almost every state, however, the prosecution is either in the name of or is controlled by the public authorities, and it will be noticed that in Kansas the county attorneys of the various counties are charged with the conduct of the prosecution. The proceedings against the petitioner in the state court were under chapter 47, Gen. St. Kan. 1889, being "An act providing for the maintenance and support of illegitimate children," the principal features of which bearing upon this inquiry are as follows: When any unmarried woman shall make written complaint, under oath, before a justice of the peace, charging a person with being the father of a bastard child of which she is pregnant or has been delivered, the justice issues his warrant, and the defendant is arrested, and brought before him. The prosecution is in the name of the state of Kansas on the relation of the prosecuting witness. The inquiry before the justice is in the nature of a preliminary examination, and, if his determination is against the defendant, he is required to enter into a recognizance for his appearance at the next term of the district court, or be committed to jail. If the district court or jury in such state court find against the defendant, "he shall be adjudged the father of such child, and stand charged with the maintenance and education thereof." The district court enters judgment accordingly, and makes such order as seems just to it for securing the maintenance and education of the child by the annual payment to the mother, or if she be dead, or an improper person to receive the same, to such other person as the court may direct, of such sum of money as the court may order, and payable at such times as may be adjudged proper. The judgment shall require of the defendant that he secure the payment of the sum adjudged by good and sufficient sureties, or, in default thereof, that he be committed to jail until the security is given; but the imprisonment cannot exceed one year. Execution may issue on the judgment whenever any amount is due on the same. After the arrest, the trial and proceedings of the prosecution before the justice and in

the district court are governed by the law regulating civil actions, except as otherwise especially provided. The prosecuting witness may at any time before final judgment dismiss the suit, if she shall enter of record an admission that provision for the maintenance of the child has been made to her satisfaction. The several county attorneys within their respective counties are charged with the prosecution of all cases originating under the act. The supreme court of the state, in a number of decisions interpreting the act and defining its objects and purpose, has said that the obligation sought to be enforced is not based upon contract, either express or implied; that the proceeding is not a suit to recover a sum of money owed by the defendant to the complaining party; that the judgment rendered is not a debt, within the meaning of the constitution, prohibiting imprisonment for debt except in case of fraud; that the moral duty of the father to make provision for the support of his illegitimate offspring is made a legal duty by the statute; and, finally, that the proceeding, which partakes of both a criminal and civil character, is a police regulation, designed to require of the putative father that he secure the public against loss and expense in the maintenance of his child, which might otherwise become a public charge.

There is no merit in the contention that, because a judgment is, generally speaking, a debt, it is like any other debt in the administration of the bankrupt law. The character of the claim upon which the action is brought and the nature of the proceeding enter into and determine the character of the judgment when brought into a court of bankruptcy. Nor is it significant that an execution may issue to enforce the collection of the judgment against the petitioner. The collection of a fine and costs imposed for violation of a criminal statute is frequently enforced by that writ. It has been held that a judgment obtained under a statute of Connecticut, whereby the bankrupt was ordered to make certain quarterly payments for the maintenance of a bastard child of which he had been adjudged the putative father, was not within the meaning of the term "debt" as used in the bankrupt act of 1841. In re Cotton, Fed. Cas. No. 3,269. See, also, Com. v. Erisman, 21 Pittsb. Leg. J. 69. At common law a father was bound for the support of his legitimate offspring, and the obligation was a continuing one during its minority. It was never intended by any bankrupt law that the parent should be released from such an obligation by his discharge in bankruptcy, and, if means were prescribed for the enforcement of the duty against a neglectful father by a proceeding in court, the remedy would be equally without the provisions of a bankrupt act. There is no difference in principle between such a case and the one under consideration. The statute supplies an omission of the common law, and also charges the father of an illegitimate child with its maintenance and education; and, on account of the uncertainty of its paternity, an order or judgment of filiation is provided for after due hearing. That such obligations are put into a concrete form by the judgment of a court for their better enforcement can afford no cause for a release therefrom by a discharge in bankruptcy. The application of the petitioner will be denied.