### In re DRESSER et al.

(District Court, S. D. New York. July 20, 1903.)

1. BANKRUPTCY—ARREST OF BANKRUPT—EXEMPTION—TIME.

Bankr. Act July 1, 1898, § 9a, subd. 2, 30 Stat. 549, c. 541 [U. S. Comp. St. 1901, p. 3425], provides that a bankrupt shall be exempt from arrest on civil process issuing from a state court except on a debt or claim from which his discharge in bankruptcy would not be a release, "when in attendance on a court of bankruptcy, or engaged in the performance of a duty imposed by the act." General Order No. 12 (18 Sup. Ct. vi) provides that the bankrupt shall receive protection against arrest, to continue until final adjudication on his application for discharge unless suspended or vacated by order of court. *Held*, that the bankrupt's exemption from arrest was not restricted to particular occasions when his physical attendance in court was required, or he was actually engaged in performing some required duty, but that the court was authorized to release him from arrest on his furnishing bond to obey the orders of the court, and not depart from the jurisdiction during the continuance of such exemption.

In Bankruptcy. Exemption of bankrupt from arrest upon civil proceedings in a State Court, while he is in attendance upon the bankruptcy court in the performance of his duties to the bankrupt estate.

Morris J. Hirsch, for the motion.
Clifford W. Hartridge, opposed.

ADAMS, District Judge. This is a motion on the part of the bankrupt Dresser for the continuance of an injunction, heretofore granted upon his petition, pending the return of an order for Mary R. H.

Mayer to show cause why she and her agents, and the Sheriff of the County of New York, should not be restrained from executing, or attempting to execute, an order granted by the New York Supreme Court for the arrest of Dresser in an action brought therein by Mayer to recover damages for the conversion of fifty $1,000 bonds of the Mexican Central Railway Company, delivered to the bankrupt on the 5th of November, 1902.

The petition alleges that on the 7th day of May, 1903, an involuntary petition was filed against Dresser and his partner and that thereafter, on the 9th day of July, 1903, they were duly adjudicated bankrupts; that the action in the State Court was instituted and the arrest threatened and that unless the court should intervene to stay the execution of such order, the petitioner would be incarcerated in Ludlow Street Jail, the County Prison of New York County. The petition further alleges that the petitioner is in attendance upon this court by reason of his adjudication as a bankrupt and is ready and will at all times obey any and all orders that may be made by this court; that he is informed that the referee in charge of the case is about to call a meeting of the creditors. He therefore asks that the plaintiff Mayer be restrained until a final adjudication be had upon an application for discharge or until the time limited for such application has expired.

The plaintiff has filed the following affidavit in reply:

"State of New York, County of New York—ss.

"Charles W. Mayer, being duly sworn, deposes and says that he is the attorney in fact for Mary R. H. Mayer, the plaintiff in a certain action for conversion, in the New York Supreme Court, New York County, in which Daniel Le Roy Dresser, one of the Bankrupts in this proceeding is defendant, and in which an order of arrest has been issued, and that he resides at No. 267 Fifth Avenue, in the Borough of Manhattan, New York City.

"That he has personal knowledge of all the facts and circumstances connected with the transaction between Daniel Le Roy Dresser, and deponent, as attorney in fact for Mary R. H. Mayer. That all the said transactions were conducted by deponent personally.

"That although the form of action of said complaint, stated simply, was one of conversion, in addition to the facts therein stated, and upon information and belief, the defendant, Daniel Le Roy Dresser obtained the said bonds by false pretences, and under a trust agreement to keep the said bonds in his possession, subject to the order of the said Mary R. H. Mayer, with intent to defraud the plaintiff in the action hereinbefore mentioned.

"On information and belief that, within two days after deponent deposited said bonds with said Daniel Le Roy Dresser, under said Trust Agreement, the said Daniel Le Roy Dresser disposed of said bonds for his own use, which was his intention at the time he induced deponent to deposit said bonds with him.

"That being in ignorance of the above facts deponent on the 9th day of February, 1903, demanded of said Daniel Le Roy Dresser the return of the said bonds, which said Dresser refused although the said Dresser at said time stated to deponent that he had the said bonds in his possession or under his control.

"That immediately upon deponent's learning that the statement which Daniel Le Roy Dresser had made to him, to wit that he had in his custody the aforesaid fifty Mexican Railway bonds referred to particularly in the affidavit of deponent herein, among the papers on which the order of arrest in the Supreme Court of the State of New York, was granted, that thereupon deponent demanded of Daniel Le Roy Dresser that he should repurchase the same bonds, or at any rate should furnish the money for them. This, Dresser promised to do immediately.

"That deponent knew, and Dresser well knew that Dresser was not acting as any broker or agent, but simply held these bonds subject to the order of Mary R. H. Mayer.

"That from the repeated promise of Daniel Le Roy Dresser made from day to day, and the promise of his Counsel, Charles S. Mackensie, that these bonds, or their face value would be paid, deponent waited.

"That instead of returning these bonds, or paying their value, the bankrupt made an assignment of all his property to the aforesaid Charles S. Mackensie, although on the 20th day of February, 1903, the following telegram which·Charles S. Mackensie admitted he sent to Clifford W. Hartridge about these bonds, was received by Clifford W. Hartridge

'February 20th, 1903.

'Clifford Hartridge,
    '149 Broadway,
       'New York.

'Will see you as soon as I reach New York, about twelve o'clock. Arranged to deliver bonds.                   Charles S. Mackensie.'

"That, as deponent is informed and believes, that within an hour after said bankrupt, Daniel Le Roy Dresser, made the assignment to said Charles S. Mackensie, certain creditors brought through Messrs. Black, Olcott, Gruber & Bonynge, an action in this Court, to put said bankrupt, Daniel Le Roy Dresser, into bankruptcy.

"That furthermore, on information and belief, these creditors, through the above mentioned firm, after said creditors had been called in consultation,—to which consultation your deponent was not invited, nor about which was he ever notified, nor about which did he know anything except what he afterwards saw in the public prints, and heard from various people,—met and agreed to accept One hundred cents on the dollar for their claims, less ten per cent. for the above mentioned firm of lawyers.

"That thereafter, on information and belief, these creditors who were to be thus taken care of, adjourned these bankruptcy proceedings from time to time, with the understanding that they were to get their money on the 7th day of July, 1903.

"That your deponent, through his Counsel, Clifford W. Hartridge, notified both Morris J. Hirsch, and Charles S. Mackensie, that if some provision were not made for the returning of Mary R. H. Mayer's bonds, or the payment for the same, that Mrs. Mayer would be compelled to take some action to protect herself, and that the only proper protection by way of an action that said Mary R. H. Mayer had, was an action for conversion.

"On information and belief deponent's counsel was informed by Messrs. Hirsch and Mackensie that if any action was taken it would not only seriously harass Dresser, but would interfere with his being able to pay anybody.

"That deponent waited before serving or attempting to serve any order of arrest, or any papers in an action for conversion on the aforesaid Daniel Le Roy Dresser until after the 7th of July, 1903.

"That deponent is informed and believes that immediately after the 7th of July, to wit on the 8th or 9th of July, said Dresser voluntarily either moved, or permitted himself to be adjudged a bankrupt.

"That on the 9th day of July, 1903, deponent's Counsel obtained an order of arrest from one of the justices of the Supreme Court of the State of New York, and on the morning of the 10th of July, placed said order of arrest with its accompanying papers, to wit the affidavit, complaint and summons in the hands of the sheriff, at the same time notifying Morris J. Hirsch that this was done, in order that he should make any arrangements for bail that he wished.

"That thereupon said Morris J. Hirsch obtained the order to show cause at bar.

"That deponent has shown every consideration possible in the hope that all creditors might be paid.

"Deponent has in no wise attempted to interfere with any adjustment the Bankrupt could make with his creditors.

"Deponent is informed and believes that in the argument before your Honor, and the affidavit of Dresser in this motion, it is and was stated that there would be an immediate call for creditors made by the Referee.

"Deponent is informed and believes that the Referee has stated that there would be no such call until on or after the 20th day of July, 1903, for the reason that the bankrupt has failed so far to file the schedule of his assets and liabilities.

"That the bail required in the order of arrest granted in the Supreme Court of the State of New York, is Fifty thousand dollars ($50,000.00).

. "That on information and belief, if this stay is not granted, and the bankrupt is kept within the reach of the orders of this Court, no possible harm could come to the creditors.

"On information and belief, that the fact that the deponent has made this a civil action, shows consideration for the interest of all the parties concerned, and deponent respectfully requests this Honorable Court not to make him a sufferer thereby, but that this application for a stay be dismissed.

"Charles W. Mayer.

"Sworn to before me, this 14th day of July, 1903.
                    "Daniel C. Beermand, Notary Public New York County."

The bankrupt has not denied any of the facts alleged in the opposing affidavit but relies upon the allegations in his petition and the case of In re Lewensohn (D. C.) 99 Fed. 73, affirmed in 104 Fed. 1006, 44 C. C. A. 309.

Although the facts in the two cases are dissimilar, the governing principle that the bankrupt should be exempt from arrest on civil process in order to be able to attend to his duties in the bankruptcy court, is the same.

In the Lewensohn Case, it was said by Judge Brown (pages 75, 76):

"3. By section 9a, subd. 2 [Act July 1, 1898, c. 541, 30 Stat. 549, U. S. Comp. St. 1901, p. 3425], the bankrupt is declared entitled to be exempt from arrest on civil process, except upon a debt or claim from which his discharge would not be a release. This imports that the bankrupt shall not be exempt from arrest where the debt or claim would not be released by his discharge, except to the limited extent provided; namely, when the bankrupt is 'in attendance upon a court of bankruptcy or engaged in the performance of a duty imposed by the act.'

"This latter exception is new; there was no similar provision in the act of 1867 [Act March 2, 1867, c. 176, 14 Stat. 517]. How far does this exception extend? Is it to be construed as applying to the whole period during which the bankrupt has duties to perform, or only to the particular occasions when he is actually performing them? Section 7 [Act July 1, 1898, c. 541, 30 Stat. 548, U. S. Comp. St. 1901, p. 3425], imposes numerous duties upon the bankrupt which continue at least up to the time of the hearing on his discharge. In most important cases his attendance for examination is required on numerous occasions from time to time, not merely upon his original examination and on his examination upon the application for a discharge, but on many other questions that frequently arise with reference to his assets or to disputed or doubtful liens or claims against the estate.

"For the bankrupt it is contended that a liberal construction should be given to this exemption, in order to avoid the perpetual embarrassments in the bankruptcy proceedings which would be caused by his incarceration under state process. Opposed to this it is urged, that the exemption should be limited to the particular occasions when the bankrupt is actually in attendance in court, or actually performing a required duty, differing little from the ordinary right of a witness to exemption while in attendance on the court, to which exemption he was held entitled under the act of 1867 without any express provision. In re Kimball, 1 N. B. R. 193, 14 Fed. Cas. 474.

"In general order 12 (18 Sup. Ct. vi) the supreme court, in prescribing the precise extent of the bankrupt's protection from arrest, seems virtually to

have given its own construction to this section, by providing that the bankrupt shall attend before the referee on a day named; 'and from that day shall be subject to the orders of the court in all matters relating to his bankruptcy, and may receive from the referee a protection against arrest to continue until the final adjudication on his application for a discharge, unless suspended or vacated by order of the court.'

"General order 30 (18 Sup. Ct. viii), being presumably limited in its operation to the same period of time (Loveland, Bankr. 514), becomes thereby practically compatible with section 9a, subd. 2. In the case of In re Baker (D. C.) 96 Fed. 954, the exception in section 9a, subd. 2, is not considered.

"The construction apparently given to that section by general order 12, does not seriously interfere with the creditors' right to arrest in cases where the discharge is not a bar. It merely suspends the exercise of that right for a certain limited period. The bankrupt is not entitled to postpone his application for a discharge beyond a year from the adjudication, and no extension of time would be granted by the court merely to prolong his freedom from arrest.

"As this court may suspend or vacate the protection from arrest provided by rule 12, the court may grant it on terms, and hence under section 2, subd. 15 [Act July 1, 1898, c. 541, 30 Stat. 545, 546, U. S. Comp. St. 1901, p. 3421], may require security that the bankrupt during its continuance will obey all orders of the court and not meanwhile depart from its jurisdiction. Upon the bankrupt's giving a bond to that effect, with approved security, the stay should be continued for a period not exceeding 12 months from the date of adjudication, unless an application for discharge be then pending, and in that case, until the final determination of that application."

No other discussion of the matter is necessary.

The motion will be granted upon the bankrupt giving, within five days, approved security in the sum of $50,000 that he will during the continuance of the injunction obey all orders of this court and not depart from its jurisdiction. Order to be settled upon one day's notice.