RELIANCE INSURANCE COMPANY,
Appellant,

v.

The COMMONWEALTH of Kentucky,
DEPARTMENT OF TRANSPORTA-
TION, et al., Appellees.

DeSALVO CONSTRUCTION COMPANY,
and United States Fidelity and Guaran-
ty Company, Appellants,

v.

The COMMONWEALTH of Kentucky,
DEPARTMENT OF TRANSPORTA-
TION, Department of Revenue, and Di-
vision of Unemployment Insurance, Ap-
pellees.

Court of Appeals of Kentucky.

Aug. 4, 1978.

Rehearing Denied Sept. 29, 1978.

Discretionary Review Denied
Feb. 20, 1979.

232

William M. Johnson, Frankfort, for Reliance Ins. Co.

Michael L. Judy, Frankfort, for DeSalvo Const. Co.

Joseph J. Leary, Frankfort, for U. S. Fidelity and Guaranty Co.

Don Duff, Frankfort, for Ohio Operating Engineers Trust, etc. and Ohio Laborers Trust, etc.

James R. Odell, Lexington, for Goodyear Tire & Rubber Co.

Ryan M. Halloran, Frankfort, for Commonwealth of Kentucky, Dept. for Human Resources, Bureau of Social Ins., ex rel., Div. for Unemployment Ins.

Alex W. Rose, Wayne J. Simon, Frankfort, for Commonwealth of Kentucky, Dept. of Revenue.

Charles D. Moore, Jr., Dept. of Transp., Frankfort, for Commonwealth of Kentucky, Dept. of Transp.

Charles G. Heyd, Bauer, Morelli & Heyd Co., LPA, Cincinnati, Ohio, for the Highway Equipment Co.

Before GANT, HOGGE and WINTERSHEIMER, JJ.

GANT, Judge.

These are companion cases involving two construction contracts between the DeSalvo Construction Company, (hereinafter called DeSalvo), and the Commonwealth of Kentucky for an interstate highway through Kenton and Campbell counties. Appellant United States Fidelity and Guaranty Company was surety on the performance bond of DeSalvo for work done in Campbell County, and appellant Reliance Insurance Company occupied the same position with respect to work done in Kenton County. About June 30, 1976, DeSalvo defaulted on the completion of both projects and the respective sureties retained another company to complete the work under the provisions of their performance bonds. Prior to the default, DeSalvo had earned some $585,000 for work completed, which sums had not been appropriated or disbursed to

the company. The Commonwealth of Kentucky, Department of Transportation, filed these actions in the Franklin Circuit Court for declaratory relief, moving the court to require claimants to interplead and to have the court determine priorities against this sum owed to DeSalvo. After such claims were filed, each of the appellees herein filed a motion for summary judgment, all of said motions being sustained, and these appeals resulted.

## SET–OFF FOR TAXES AND UNEMPLOYMENT INSURANCE

█ The question which these two cases have in common is this: Does the Commonwealth of Kentucky have a right of set-off for taxes and unemployment insurance, under statutory law or equity, against funds in their hands which were due to a contractor at the time of default in preference to the claim of a surety which has completed the project under a performance bond?

In situations of this kind, there customarily arise three categories of funds which are subject to dispute. These categories are (1) unappropriated funds due by the government to the contractor pursuant to progress reports for work already accomplished prior to default; (2) retained funds, customarily 10%, which are withheld by the State pending completion of the project; and (3) progress payments made after the surety undertakes to complete the project pursuant to its performance bond with the contractor. The two cases before us fall under category one. It should be further noted that the bond in question was a performance bond, guaranteeing satisfactory completion of the project, and not a payment bond, guaranteeing payment of all labor and materials.

█ The controlling statute herein is KRS 44.030, which states:

Money not to be paid to state debtor.— No money shall be paid to any person on a claim against the state in his own right, or as an assignee of another, when he or his assignor is indebted to the state. The claim, to the extent it is allowed, shall be credited to the account of the person so indebted, and if there is any balance due him after settling the whole demand of the state such balance shall be paid to him.

This statute as presently worded was formerly indexed as Ky.Stat. 4701 and dates back to 1893. In construing the statute, the court in *Long v. McDowell*, 107 Ky. 14, 52 S.W. 812, 813 (1899), said: "And this provision of the law made it the duty of the treasurer to deduct such indebtedness from the claim sued on, before making payment to Julian [the creditor] or his assignee."

Subsequently, in *Stone v. Mayo*, 21 K.L.R. 1559, 55 S.W. 700 (1900), the court stated: "It would seem, however, that this section was enacted for the express purpose of making the state a preferred creditor, and that public policy so requires."

An earlier case of *Johnson v. Auditor*, 78 Ky. 282 (1879), would seem to be contrary. This was a case where a jailer had signed a bond for a defaulting sheriff and the state sought a set-off against funds due the jailer for feeding and housing prisoners. The court held that there should be no set-off under these circumstances because it would be against public policy when others had relied on these funds to furnish the food, etc. to the jailer but, by its own language, this case was to be narrowly construed to this situation. This case was clearly distinguished and limited in both *Long v. McDowell* and *Stone v. Mayo, supra*. The statute was amended following the *Johnson* case to its present form.

The present statute is clear and unambiguous and distinctly grants the right of set-off to the state.

## EQUITY AND COMPARABLE FEDERAL CASES

█ The statutory law so lucidly set out in KRS 44.030 is but an extension to the government of the equitable right of set-off given to all persons. As the Supreme Court of the United States said in the case of *United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947):

The government has the same right "which belongs to every creditor, to apply the unappropriated monies of his debtors, in his hands, in extinguishment of the debts due to him." (Citing cases). 332 U.S. at 239, 67 S.Ct. at 1602.

.     .     .     .     .

And one whose own appropriation and payment of money is necessary to create a fund for general creditors is not a general creditor. He is not compelled to lessen his own chance of recovering what is due him by setting up a fund undiminished by his claim, so others may share it with him. In fact, he is the best secured of creditors; his security is his own justified refusal to pay what he owes until he is paid what is due him. 332 U.S. at 240, 67 S.Ct. at 1602.

Numerous federal cases have been cited by the appellants, all of which have reference to the Miller Act, 40 *U.S.C.* § 270a, and regulations propounded thereunder, which Act is comparable to KRS 44.030. Many of these cases related to payment bonds and not performance bonds, and all cases referred to retained funds—category two herein—and not to unappropriated funds due to the contractor at the time of default. The federal case most clearly in point is the case of *Security Insurance Co. of Hartford v. United States,* 428 F.2d 838, 192 Ct.Cl. 754 (1970). This case clearly distinguishes between the types of funds. It states that the surety, under the Miller Act, was entitled to recover from the *retainage,* free of set-off, on its performance bond but not its payment bond, but that the surety on the performance bond was "[*not*] entitled to recover free from set-off, any amount earned by, but not paid to, the contractor prior to the date the plaintiff [surety] took over the performance of the contract."

■ Appellants further urge that the court should apply the "no debt" theory to this case. Contrary to the definition furnished us by the appellants, this doctrine arises where the contractor breaches the contract before the *balance* of the money due the contractor has become due, so that the contractor has no enforceable right to recover the balance and tax liens cannot be asserted against funds which have not been earned by the contractor. This relates to category three, above, and has no application here. See *Wolverine Insurance Co. v. Phillips,* 165 F.Supp. 335 (N.D.Iowa 1958).

■ The appellants further complain of the payment from these funds of certain taxes due and owing from the Little King Coal Company, which company was wholly owned by DeSalvo. Under the provisions of KRS 44.030, we know of no distinction between taxes arising from the project from which the fund was created and other projects or ventures by the same debtor. In fact, as stated above, we feel that KRS 44.030 is merely an extension to the government of the equitable right of set-off which belongs to every creditor, and in those cases it is seldom that the two debts arise out of the same transaction. When the same transaction is involved, this is referred to as recoupment.

### GOODYEAR TIRE & RUBBER COMPANY

■ Appellee Goodyear sold and delivered to DeSalvo three earth mover tires and related equipment for use on the Kenton County project for the sum of $11,755.85. The affidavits and pleadings disclose that they were delivered to this project prior to default; that they were, in fact, used on the equipment thereon; that Goodyear properly perfected its lien and that no counter-affidavits to the motion for summary judgment denying these facts were ever filed by Reliance. Reliance contends that the supplies were not consumed, that they may have been diverted to the Campbell County project and that the Caterpillar scraper is not a "vehicle" within the meaning of KRS 376.195(3). We know of no statutory language or case law which requires the consumption of supplies furnished before a lien will apply. The lien right arises when the supplies are "furnished" for the construction of a public highway or other public improvement. KRS 376.210(1). KRS 376.195(2) does speak

of consumption of material, such as gasoline, oil, grease, form lumber, etc., but these tires are supplies within the definitions provided by the statutes.

■ The fact of diversion is not shown by the record but is merely speculative on the part of Reliance. The tires were delivered to the Kenton County project and used thereon, which is sufficient. In fact, delivery may not even be necessary in some instances. The case of *Grainger & Co. v. Johnson*, 286 F. 833 (6th Cir. 1923), in interpreting the word "furnished" as used in the Kentucky Statutes, held that the lien statute was satisfied when steel was fabricated and remained on the premises of the supplier. Even had the supplies been diverted, this was not the fault nor the responsibility of the supplier. Goodyear's obligation ended when it delivered the supplies to DeSalvo on the Kenton County project for use thereon.

■ The contention of Reliance that the scraper herein is not a "vehicle" is specious at best. KRS 376.195(3) defines supplies as including ". . . tires and tubes furnished for use on vehicles engaged in the performance of the work . . ." Appellants would have us limit this to passenger cars or trucks, which we feel is contrary to the intent of the statute. The types of vehicles necessary for the construction of a public highway far transcend this narrow definition.

## PENSION FUNDS

Summary judgment was granted by the lower court to two groups of administrators and trustees for pension, health and welfare funds, representing various employees on the Kenton County project. Reliance appeals, arguing that (a) the contributions were not for labor on the project and thereby not subject to coverage under KRS 376.-210; (b) the trustees are not proper parties to bring this action; and (c) the right of the surety is superior to the right of the trustees, even if the first two objections are meritless.

■ The contention that "fringe benefits" are not payment for labor is without worth. These benefits are specifically recognized in our statutes dealing with public works as a part of the prevailing wage.[1] Thus we have a statute declaring that in dealing with the prevailing wage on public works fringe benefits are to be included, and a second statute guaranteeing that laborers who are not paid for their work on public projects shall have a lien for the payment of that labor. It would certainly be inconsistent at best to attempt to exclude fringe benefits from the recovery of the laborer.

A comparable case from the Supreme Court of the United States is the case of *United States v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). This was a Miller Act case in which it was clear that the contribution by the employer to the fund was a part of the agreement to pay

1. 337.505. Definition of "prevailing wage," fringe benefits included.—For the purpose of KRS 337.505 to 337.550, the term "prevailing wage" for each classification of laborers, workmen, and mechanics engaged in the construction of public works within the commonwealth of Kentucky, means the sum of:

. . . . .

(2) An additional amount per hour equal to the hourly rate of contribution irrevocably made or to be made by an employer on behalf of employes within each classification of construction to a trustee or to a third person pursuant to an enforceable commitment to carry out a financially responsible plan or program, which was communicated in writing to the employes affected, for the following fringe benefits: medical or hospital care, pensions on retirement, death compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, accident insurance, vacation and holiday pay, defraying costs of apprenticeship or other similar programs, or other bona fide fringe benefits, but only where the employer is not required by other federal, state or local law to provide any of such benefits: Provided, said additional amount may, at the discretion of the employer, be paid either in cash to the employe or by contributions for fringe benefits, or partly in cash and partly by such contributions, it being the intention of this subsection to recognize fringe benefits as a part of the prevailing wage rate where made in accordance with this subsection.

for the services of the laborers on the construction job, just as was present in this case. The court held that ". . . these contributions are in substance as much 'justly due' to the employees who have earned them as are the wages payable directly to them in cash." 353 U.S. at 220, 77 S.Ct. at 798.

We hold further that the trustees of the funds were the proper parties to bring this action and file claims on behalf of the laborers. CR 17.01 would seem to permit such an action by the trustees as "an assignee for the benefit of creditors." However, of even greater import is the fact that the agreement between DeSalvo and the laborers recognized these funds, and the right of trustees to represent and require payment thereto. The appellant, surety for DeSalvo, can hardly deny such relationship. Although dealing with a payment bond, the language in *United States v. Carter, supra,* says it quite well:

> The master labor agreements not only created Carter's obligation to make the specified contributions, but simultaneously treated the right of the trustees to collect those contributions on behalf of the employees. The trust agreement gave the trustees the exclusive right to enforce payment. The trustees stand in the shoes of the employees and are entitled to enforce their rights.
> Moreover, the trustees of the fund have an even better right to sue on the bond than does the usual assignee since they are not seeking to recover on their own account. The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund and those beneficiaries are the very ones who have performed the labor. 353 U.S. at 220, 77 S.Ct. at 798.

We hold that the right of the trustees of these pension funds is superior to that of the surety to those funds undisbursed and unappropriated from payments due before default. The appellant seeks to apply the "equitable lien" or "no debt" theories but, as set out above, these do not apply to category one funds.

[15–17] In regard to one of the pension funds, appellee Ohio Operating Engineers had secured a mortgage from DeSalvo on certain property in Ohio, and Reliance urges that this constitutes an election of remedies. The doctrine of election of remedies is predicated on inconsistency of remedies. The test of inconsistency is whether the remedies proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other. Two remedies are inconsistent if facts relied on as a basis for one remedy are repugnant to facts relied on as a basis for another remedy. See 25 Am.Jur.2d, *Election of Remedies,* § 11, and *Edge v. City of Lexington,* 277 Ky. 750, 127 S.W.2d 393 (1939). The remedies sought here do not meet the test of inconsistency and the fund is entitled to pursue one or both. See *Citizens Trust & Guaranty Co. v. Peebles Paving Brick Co.,* 174 Ky. 439, 192 S.W. 508 (1917).

## HIGHWAY EQUIPMENT COMPANY

Appellee Highway Equipment Company filed a Statement of Lien against DeSalvo prior to default in the amount of $104,828.28 and subsequently perfected its lien. Upon motion for summary judgment, Highway Equipment filed the amended affidavit of Russell DeSalvo, president of DeSalvo Construction Company, and the affidavits of others indicating that the equipment had been furnished by Highway Equipment and in a proportion of 90% on the Kenton County project and 10% on the Campbell County project. DeSalvo further acquiesced in the claim of Highway Equipment and denied authorization to Reliance to protest in its behalf. Reliance submitted no affidavits or other proof, and summary judgment was awarded to Highway Equipment against these category one funds. Reliance urges that a genuine issue of fact concerning the percentage attributable to its project exists. This is not the court in which such issue is to be first raised. From the record before us, with the unanswered proof, there was no genuine issue of material fact. The affidavits in support of the

motion for summary judgment of Highway Equipment were quite specific and complete, and we will not disturb the proportionate allocation between the projects arrived at by the lower court in light of this evidence.

For the reasons herein stated, the judgment of the lower court is affirmed in both cases.

All concur.