UNITED STATES *v.* MUNSEY TRUST CO., RECEIVER.

No. 847.   Argued May 6, 1947.—Decided June 23, 1947.

*Philip Elman* argued the cause for the United States. With him on the brief were *Acting Solicitor General Washington, Assistant Attorney General Sonnett, John R. Benney, Paul A. Sweeney* and *Melvin Richter.*

*Alexander M. Heron* and *W. Braxton Dew* argued the cause for respondent. With them on the brief was *William L. Owen.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

This case presents a problem arising out of contracts for public building construction and repair. The rights *inter sese* of contractor, surety, assignees and government have been productive of much litigation, but we have not heretofore had to decide whether percentages retained pursuant to contract by the United States may be subjected to its set-off claims despite the claims of a surety who has paid laborers and materialmen.

In May and July, 1940, six contracts were made between the United States and the Federal Contracting Corporation, in which the corporate contractor agreed to paint and repair certain federal buildings. Each contract conformed to the requirements of statute, 49 Stat. 793, 40 U. S. C. § 270a, *et seq.*, by providing for two surety bonds, one conditioned on the completion of the work within the contract period, and the other on the payment of those furnishing labor and material to the contractor. The Aetna Casualty and Surety Company signed those bonds, each of which assigned to it the contractor's claims against the government for sums due on the contracts whenever the surety should be compelled

by default of the contractor to fulfill its obligations.[1]
The work was completed by the contractor apparently in
1940, and accepted by the government. The surety
therefore was not called upon to make good the promise
of the performance bonds. But the contractor did not
pay $13,065.93 owed to persons who had supplied labor
and material for performance of five of the six contracts.
This indebtedness the surety paid between April and
September, 1941 as the payment bonds obliged it to do.

Under the customary terms of its contracts, the gov-
ernment had retained percentages of the progress pay-
ments due to the contractor. This retained money, on
acceptance of the work, amounted to $12,445.03, but it
was not disbursed. On October 18, 1940, the Federal
Contracting Corporation submitted a bid to the United
States for another painting job, in St. Louis. That bid
was accepted, but the contractor then failed to enter into
contract for the work. Another contractor painted the
building for a price which left the government considerably
more out-of-pocket than it would have been had Federal
undertaken performance at its bid price. It is undis-
puted that $6,731.50 is the amount of damages sustained
by the government after it had applied the contractor's
deposit of $415.00 in reduction.

Almost inevitably, court process was begun to untangle
claims to the money the United States still owed on the
six contracts. A stockholder of Federal asked the United
States District Court for the District of Columbia to
appoint a receiver [2] to collect the money. The Aetna

---

[1] These assignments were of course invalid against the United
States, R. S. § 3477, 31 U. S. C. § 203; *Martin* v. *National Surety Co.,*
300 U. S. 588, but they enable the surety to prevail over the con-
tractor if there is contest between them.

[2] Such proceedings to appoint a receiver in the District of Columbia
are for the purpose of taking possession of a fund or property and

Casualty and Surety Company was made a party to that action. Respondent here, the Munsey Trust Company, was appointed receiver with directions to demand and authority to receive from the United States the proceeds of the six contracts. The order of appointment also recited that "the proceeds of all collections made by the Receiver pursuant to this order shall be held for the reimbursement of the defendant The Aetna Casualty and Surety Company for expenditures made by it in the payment of furnishers of labor and material under the several contracts of the Federal Contracting Corporation."

On demand by the receiver for the amounts due, the General Accounting Office deducted the government's claim of $6,731.50 and paid over $5,713.53. Aetna, by letter to the Comptroller General, protested the government's settlement by set-off and asserted its right to an additional $3,568.23.[3] The receiver also protested the set-off and demanded $3,143.23 for reimbursement of the surety. It relied upon *Maryland Casualty Co.* v. *United States,* 100 Ct. Cl. 513, 53 F. Supp. 436. The Acting Comptroller General declined to follow the opinion of the Court of Claims, in the absence of ruling by this Court, and rejected the protests. When the receiver reported its efforts to the district court, it was ordered to turn over to the surety the money collected, less $500. That sum was for prosecution of suit in the Court of Claims for the recovery of whatever other moneys "may be due under the contracts of the Federal Contracting Corporation." This action was begun, and the Court of Claims gave judgment for $3,568.23 to respondent. 107 Ct. Cl. 131, 67 F. Supp.

to prevent its loss or dissipation. Insolvency is not a necessary allegation, *Houston* v. *Ormes,* 252 U. S. 469, and there is no claim in this case that the contractor is insolvent.

[3] The surety did not and could not claim the whole amount retained by the government. The payments for which it was liable, and which it paid, on two of the contracts exceeded, and on the other four were less than, the amounts retained on each particular contract.

976.   We granted the government's petition for certiorari because of the importance and novelty of the question and the cumulative effect of *Maryland Casualty Co.* v. *United States, supra,* and the decision below.   330 U. S. 814.

In these cases, it is usual for the rights relied upon to be largely derivative or subrogated ones.   Decision will be attended with unnecessary confusion and difficulty if it is not clear whose rights are being asserted and who claims them.   The Court of Claims treated this case as though the surety were plaintiff.   But the district court directed the receiver to bring the suit.   Its order of appointment made it the representative of Federal Contracting Corporation, although the sums it was to collect were to be held for the reimbursement of Aetna.   The second order authorized this action to collect whatever other money might be held to be due under the six contracts which the government would not voluntarily pay.   Certainly, the receiver sued at least in the right of Federal, but since its efforts were directed to be for the benefit of Aetna, it might assert the surety's rights also.   *Samuel Olson & Co.* v. *Voorhees,* 292 F. 113, 115.

If the right of the United States to make the set-off were opposed only by the claims of the contractor, this case would present no difficulty.   The government has the same right "which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him."   *Gratiot* v. *United States,* 15 Pet. 336, 370; *McKnight* v. *United States,* 98 U. S. 179, 186.   More than that, federal statute gives jurisdiction to the Court of Claims to hear and determine "All set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court . . . ."   Judicial Code § 145, 28 U. S. C. § 250

(2). This power given to the Court of Claims to strike a balance between the debts and credits of the government, by logical implication gives power to the Comptroller General to do the same, subject to review by that court. Insofar as the suitor in the Court of Claims asserted the contractor's title to the sum in dispute, that court was under statutory duty to recognize the undisputed claim for damages of the United States. *Cherry Cotton Mills, Inc.* v. *United States,* 327 U. S. 536.

But the surety urges that it is subrogated also to the rights of laborers and materialmen whom it paid and of the United States. From *Prairie State Bank* v. *United States,* 164 U. S. 227, to *American Surety Co.* v. *Sampsell,* 327 U. S. 269, we have recognized the peculiarly equitable claim of those responsible for the physical completion of building contracts to be paid from available moneys ahead of others whose claims come from the advance of money. But in all those cases, the owner was a mere stakeholder and had no rights of its own to assert. Respondent tells us that here the United States is in the same position and that as a general creditor it has no more right to the money which it holds than does any other general creditor of the contractor.

At the time demand for payment was made by the receiver, the claim of the United States on the St. Louis contract was extant for some time. The disbursing officers, therefore, did not concede that they held the entire amount of the retained percentages for distribution to the contractor or others. And one whose own appropriation and payment of money is necessary to create a fund for general creditors is not a general creditor. He is not compelled to lessen his own chance of recovering what is due him by setting up a fund undiminished by his claim, so that others may share it with him. In fact, he is the best secured of creditors; his security is his own justified refusal to pay what he owes until he is paid what is due him.

But the infirmity in respondent's case goes deeper. If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation. *Cf. H. Herfurth, Jr., Inc.* v. *United States,* 89 Ct. Cl. 122; see *Schmoll* v. *United States,* 105 Ct. Cl. 415, 455, 63 F. Supp. 753, 757; *Maryland Casualty Co.* v. *United States,* 100 Ct. Cl. 513, 521–522, 53 F. Supp. 436, 440. They cannot acquire a lien on public buildings, *Hill* v. *American Surety Co.,* 200 U. S. 197, 203; *Equitable Surety Co.* v. *McMillan,* 234 U. S. 448, 455, and as a substitute for that more customary protection, the various statutes were passed which require that a surety guarantee their payment. Of these, the last and the one now in force is the Miller Act under which the bonds here were drawn.

The surety says, nevertheless, that the laborers and materialmen may have a lien, or something in the nature of a lien, on the retained percentages. Its argument runs into logical difficulties. For it asserts that the moneys are retained by the government as much for assurance that the contractor will perform his contract by paying the laborers and materialmen as by completing the work on time. It is said to follow that so long as they remain unpaid, the contractor may not demand payment and the government would be justified in refusing to disburse the retained percentages.[4] In that case, how may the laborers and materialmen have a lien upon money which the United States may legally keep? Surely it is not intended that the laborers and ma-

---

[4] If the money is retained only to assure performance of the work, then the contractor might compel payment when the work is accepted. In that case, the surety's argument falls, since obviously, before paying, the government might set off claims against the contractor.

terialmen may claim payment of that which is not due to the contractor. We are aware that the laborers and materialmen have been paid, so that by no interpretation of the contracts between government and contractor can there be restrictions on paying out the money retained. It is said that it was the surety's payment of those claims which released the asserted contract restrictions. In relying on the rights of the laborers and materialmen, however, the surety must establish that those rights existed before their claims were paid. For it is elementary that one cannot acquire by subrogation what another whose rights he claims did not have. Once the laborers and materialmen have been paid, either by contractor or surety, they have no rights in any fund. If before they are paid, the fund to which they are said to be entitled to look is unavailable for the very reason that they are unpaid, the surety relies on nothing when it relies on those nonexistent "rights." One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made. See *Aetna Life Insurance Co.* v. *Middleport,* 124 U. S. 534, 548. He cannot jump back and forth in time and present himself at once as the unpaid claimant and again, under the conditions as they have changed, because payment was made.

We need not decide whether laborers and materialmen would have any claim to the retained percentages if both contractor and surety failed to pay them. Even if they do, certainly those would be rights to which the surety could not be subrogated, for by hypothesis it would have done nothing to earn subrogation.

The surety has yet another party whose rights it would claim, if it cannot prevail by substitution for contractor or laborers and materialmen. This contention too was sustained by the Court of Claims when it said that the rights of the United States devolved upon the surety, because of its payments. We are told that the United

States retained the money to assure performance of all the obligations of the contractor, and that the surety is entitled to apply that security to indemnify itself for performing one of those obligations. This is by analogy to the rule that an obligee, as against a surety, may not apply security in satisfaction of debts other than the one it secures. See 4 Pomeroy, Equity Jurisprudence (5th ed.) 1075. But although we have assumed, for the purposes of another argument, that assurance that laborers and materialmen will be paid is one of the reasons for retaining the money, it seems more likely that completion of the work on time is the only motive. *California Bank* v. *United States Fidelity & Guaranty Co.*, 129 F. 2d 751; see *Schmoll* v. *United States*, 105 Ct. Cl. 415, 455, 63 F. Supp. 753, 757; *Maryland Casualty Co.* v. *United States, supra,* at 439. It is hardly reasonable to withhold money in order to assure payments which perhaps can be made only from the money earned. In any event, we are not prepared to apply law relating to security to unappropriated sums which exist only as a claim.

Finally, the surety by reference to the *Maryland Casualty* case, *supra,* suggests that it has rights of its own in the money which the government retained. It argues that the implication of the several contracts among government, contractor and surety was that the moneys earned under the repair contracts would be available to pay claims arising under each job. However, if statute did not require a surety, there could be no question that the government would have the right of set-off. Respondent's contention then comes to this: that by requiring the contractor to furnish assurances that he will perform his obligations to laborers and materialmen, the government has deliberately decreased the ordinary safeguards it would have had to enforce the contractor's obligations to it. We see nothing in the words of the contract or the statute to lead us to this conclusion. On the contrary, the statutory provisions requiring a separate bond

for payment of laborers and materialmen were enacted for their benefit, not to the detriment of the government. It is the surety who is required to take risk. We have no warrant to increase risks of the government.

Respondent argues that if the work had not been completed, and the surety chose not to complete it, the surety would be liable only for the amount necessary to complete, less the retained money. Moreover, if the surety did complete the job, it would be entitled to the retained moneys in addition to progress payments. The situation here is said to be similar. But when a job is incomplete, the government must expend funds to get the work done, and is entitled to claim damages only in the amount of the excess which it pays for the job over what it would have paid had the contractor not defaulted. Therefore, a surety would rarely undertake to complete a job if it incurred the risk that by completing it might lose more than if it had allowed the government to proceed. When laborers and materialmen, however, are unpaid and the work is complete, the government suffers no damage. The work has been done at the contract price. The government cannot suffer damage because it is under no legal obligation to pay the laborers and materialmen. In the case of the laborers' bond, the surety has promised that they will be paid, not, as in the case of performance bond, that work will be done at a certain price. The law of damages is therefore not pertinent to the payment bond.

We hold that the government properly used its right to set off its independent claim and the judgment below must be

*Reversed.*

Mr. Justice Burton dissents.

Mr. Justice Douglas took no part in the consideration or decision of this case.