**UNITED STATES of America,
Intervenor, Appellant,**

v.

**TRINITY UNIVERSAL INSURANCE
COMPANY, Appellee.**

No. 16605.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1957.

---

Charles K. Rice, Asst. Atty. Gen., Ellis N. Slack, John N. Stull, George F. Lynch, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., Frank O. Evans, U. S. Atty., J. Sewell Elliott, Asst. U. S. Atty., Macon, Ga., for appellant.

Vance Custer, Charles H. Kirbo, Bainbridge, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal is from a judgment,[1] based on a stipulation of facts [2] with exhibits

---

1. "It appearing that by stipulation entered herein the check of the United States in the amount of $5259.31 drawn upon the Treasury of the United States and payable to Harry B. Gay doing business as Gay-Smith Roofing & Supply Co. was deposited with the Clerk of this Court and should be held by said Clerk until the determination by the court of the rights to said check and its proceeds and based upon its findings of fact and conclusions of law herein, the court having found that the plaintiff, Trinity Universal Insurance Co. is entitled to the possession of the check and that the defendant, Harry B. Gay, should endorse the check to the plaintiff and that the plaintiff should be paid by the United States when presented, whereupon

"It is by the court considered, ordered, adjudged and decreed:

"1. That the Defendant, Harry B. Gay, doing business as Gay-Smith Roofing & Supply Co. be and he is hereby required to endorse said check over to the plaintiff.

"2. The Clerk of this Court is directed to deliver said check to plaintiff's attorneys 60 days after date of this judgment.

"3. When presented in due course, the intervenor, United States of America, is required to pay said check according to its tenor."

2. "It is hereby stipulated and agreed between the undersigned as counsel for the remaining parties hereto, that is, the Trinity Universal Insurance Company and the United States of America, that the following facts and circumstances are true:

"The purpose of this stipulation is to provide a factual basis upon which the Court, without a jury, will be able to determine the legitimacy of the basis for each of said party's claim, and then to determine the priority of said claims, one to the other;

"(a) That on the 15th day of July, 1954, the defendant, Harry B. Gay, executed and submitted to Trinity Universal Insurance Co. application for bond, a copy of which is hereto attached, marked Exhibit A and made a part of this agreement. Further, on August 3, 1954, Trinity Universal Insurance Co., (a Texas corporation, Dallas, Texas), became surety on a payment bond in the penal sum of $14,257.21, on Government contract No. NOY 78167, between the United States of America and Harry B. Gay, dba Gay-Smith Roofing & Supply Co. for the installation of asbestos sliding and exterior painting on ten new buildings at Ellyson Field, Naval Air Station, Pensacola, Florida. (Copy of said bond attached hereto, marked Exhibit B and made a part of this agreement).

attached, in favor of appellee, the surety on a government construction contract awarding it custody, control and payment of a treasury check for $5259.31, payable to Harry B. Gay, the contractor, and representing the balance due under the contract.

"(b) After the completion of the work called for under said contract, the United States of America on December 13, 1954, issued Treasurer of the United States check in the amount of $5,259.31, payable to Harry B. Gay, dba Gay-Smith Roofing & Supply Company, and representing the balance due under said contract. Said check did thereafter come into the possession of the said Harry B. Gay, and to date has never been cashed.

"(c) That on Jan. 10, 1955, said Insurance Company filed a bill of exoneration against the said Harry B. Gay, seeking the application of the proceeds from said check on the payment of unpaid amounts due for labor and materials used in the performance of said contract. Thereupon the Court enjoined the said Harry B. Gay from cashing or negotiating and disposing of said check, and H. Grady Rawls, Attorney at Law, was appointed receiver for the purpose of taking possession of said check. Pursuant thereto said check was turnd over to the said Rawls. However, he thereafter did not give bond as receiver in accordance with the appointment order, and therefore has never qualified as such receiver and did immediately turn over said check to John P. Cowart, Clerk of this Court. By agreement of all parties hereto said check is to be held by said Clerk until determination by this Court of rights to said check and its proceeds.

"(d) Withholding and Federal Insurance Contribution Act taxes were assessed the defendant, Harry B. Gay, dba Gay-Smith Roofing and Supply Co. on March 11, 1955, in the amount of $2,156.77, together with penalty in the sum of $539.19 and interest of $64.70 thereon, for the second quarter of the year 1954, in the amount of $2191.58, together with penalty in the sum of $438.32, and interest of $43.83 thereon, for the third quarter of the year 1954, and in the amount of $1773.02, together with penalty in the sum of $88.65 and interest of $8.87 thereon, for the fourth quarter of the year 1954; that on the same date, March 11, 1955, the said Harry B. Gay was assessed Federal Unemployment Tax Act taxes in the amount of $620.80, together with penalty in the sum of $155.02, and interest of $37.20 thereon, for the year 1953, and in the amount of $2,640.09 together with penalty in the sum of $132.00 and interest of $13.20 thereon, for the year 1953; that the taxes, penalty and interest assessed, as aforesaid, total $10,902.53.

"Notice and demand for payment of said amounts were served and made upon the said defendant by the District Director of Internal Revenue on or about March 11, 1955. However, no payments have been made or credits earned by the said Harry B. Gay on account of the assessments of said taxes, penalties and interest aforesaid, so as to reduce the said total amount. At the time of the issuance of the check referred to in Par. (b) above, the United States of America did not know of this tax indebtedness.

"(e) That said Insurance Company, after March 11, 1955, as surety under and on account of said bond paid and satisfied amounts due by the said Harry B. Gay for labor and materials used in the performance of said contract in an amount exceeding the amount of said check. No reimbursement has been received by said Insurance Company for these payments. (See Exhibit C)."

To which may be added:

In his application for a bond, which became a part of the contract, the Defendant assigns to the Plaintiff, as security for his obligations, any monies which may be due and payable to the Defendant at the time of any breach or default in its contract, or in payment of any bills for which the Plaintiff might be liable, and all monies which may thereafter become due and payable to the Defendant on account of said contract.

Appellant, insisting that the judgment was wrong and must be reversed, presents two questions for decision.[3]

In support of its contention that the first question requires an affirmative answer, the United States, invoking the rule prevailing in Georgia and generally

3. (1) Whether the United States may set off a sum owed to the taxpayer under a construction contract, for which sum a Treasury check was issued to taxpayer as payee, but not cashed, against the greater amount of unpaid federal taxes owing by the taxpayer.

(2) Alternatively, even if the United States may not set off such taxes, whether its lien for taxes is entitled to priority over the claim of the surety, as assignee of any moneys due or to become due the taxpayer at the time of any breach or default in the contract, to the proceeds of the check.

elsewhere, that the issuance of a check by a debtor for the amount of his indebtedness to the payee is not in the absence of agreement to that effect a payment or discharge of the debt, points to the stipulation showing that there was no such agreement in this case and no circumstances from which one could be inferred, and to the fact that in law the attempted assignment by taxpayer to the surety of sums due and to become due under the government contract was invalid and ineffective as against the United States under the Anti-Assignment Statutes, Sec. 3477 of the Revised Statutes, 31 U.S.C.A. § 203.

Marshalling authorities, particularly United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 and South Side Bank & Trust Co. v. United States, 7 Cir., 221 F.2d 813, and pointing out that in Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312, relied on by appellee, the assignment was to a bank under a special statute, the Assignment of Claims Act of 1940, the United States, insisting that appellee's arguments on exoneration, subrogation and equitable lien are wholly beside the mark, urges upon us that the fund evidenced by the check remained legally in the possession and control of the United States and subject to being set off against the tax indebtedness owed by the taxpayer.

We agree. If the United States had not issued the check, we believe no one would claim that it was not entitled, under the Munsey case and the generally controlling principles, to protect itself.

As to debts owed it by the contractor, no reason is presented and no authorities cited to support the view that the issuance of the check in any manner changed or affected the government's right to set-off under applicable law. The cases cited by appellee, while good enough law for their facts, do not at all support its contention in this case. None of those cases dealt with a situation like this, where the United States, not having paid the contractor, seeks to assert, against the surety's claim, its right of off-set against the contractor. In this situation, the United States is the best secured of creditors; its security is its own justified refusal to pay what it owes until it is paid what is due it. United States v. Munsey Trust Co., 322 U.S. at page 240, 67 S.Ct. at page 1602.

We think it plain that the district judge was wrong and that his judgment must be reversed with directions to cause return of the check to the government so that it may cancel it and effect the set-off to which it is entitled.

Because of the above set out answer to the first question, it is unnecessary to, and we will not, consider appellant's second question.

The judgment is reversed and the cause is remanded with directions.