**UNITED STATES of America,**
**Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

United States District Court
S. D. New York.
Nov. 7, 1962.

Vincent L. Broderick, U. S. Atty., S. D. of New York, for plaintiff; Eugene R. Anderson, Asst. U. S. Atty., of counsel.

Andrew Eckel, New York City, for defendant.

TYLER, District Judge.

The United States sues defendant as surety on two construction contracts in which the contractor ("Allied") is alleged to have defaulted. Suit is predicated upon a liquidated damage clause contained in the contracts (§ 11 of each, the two contracts being essentially identical).

The government first moved to strike certain matter from the surety company's answer, which motion has been withdrawn. The defendant cross moved for summary judgment, to which the government responded by a cross motion for partial summary judgment.

The work called for in contract No. Y–21872 was to have been completed by December 15, 1950 and in contract No. Y–21874 by November 2, 1950 (completion dates as extended). On May 18, 1951, Allied received from the United States' contracting party (Chief of the Bureau of Yards and Docks, Department of the Navy) two letters: "Your contract No. Y–21872 (and No. Y–21874) * * * is hereby terminated in whole, for default, effective May 21, 1951."

The government then designated another contractor to complete the two jobs.

Neither party disputes the essential facts underlying this dispute, with one exception to be discussed later in this opinion.

■ Defendant argues that the government cannot invoke the liquidated damages clause of the contract to recover the stipulated per diem damages for the period between scheduled completion and actual completion, since those two letters of May 18, 1951 were a unilateral termination of the two contracts. The contracts have ceased to exist, defendant argues; thus the government cannot enforce their provisions.

The contract makes full provision for the rights of the parties upon "termination" by the government of the contractor's right to continue "performance of work". (Articles 11, 25, 26). The per-

tinent language of Article 11 is of particular importance here:

> " * * * If, after the expiration of the time specified in Article 1, or applicable extension thereof, the Government terminates the right of the Contractor to proceed and does not elect to complete the work, liquidated damages shall be paid as above provided for each calendar day after the time specified in Article 1, or applicable extension thereof, until the effective date of the termination of the Contractor's right to proceed. If the Government terminates the right of the Contractor to proceed and elects to complete the work as provided in Article 25, liquidated damages shall, if the Government exercises due diligence in completing the work, be paid as above provided for each day after the time specified in Article 1, or applicable extension thereof, until the delayed work is completed or accepted. The Contractor and his sureties shall be liable for all such liquidated damages accruing as hereinabove provided * * * "

In the light of this language and the undisputed fact that the government proceeded to have another contractor complete the work after the notices of termination aforesaid were sent to Allied, I conclude that the only reasonable and correct interpretation of the phraseology, " * * * your contract * * * is hereby terminated", is that it was a poorly expressed election by the Navy of the alternative permitted by Articles 11 and 25 to terminate Allied's right to proceed and to assign another to finish the jobs.

In practical terms, "complete" termination or abrogation of the contract, as contended by defendant, would have been a most unlikely step for the government to have taken under all the circumstances.

Its essential effect would have been a waiver of the liquidated damages benefits conferred upon the Navy by Articles 1 and 25—a substitution of doubt and litigation for certainty. I hold, therefore, that the government is entitled to claim liquidated damages as and for the period of time allowed by the contract, subject, however, to proof of the exercise of "due diligence in completing the work". (Article 11).[1]

A second question is raised by the parties from the fact that United States here has withheld certain partial payments to which Allied was otherwise concededly entitled. It is undisputed that the sum of $2,970 representing an Internal Revenue Service claim for withholding taxes was offset against progress or partial payments to Allied under the two contracts in question.

In Article 6, the contract provides for partial payments as the work progresses. And Article 6(d) states, quoted in its entirety:

> "The obligation of the government to make any of the payments under any of the provisions of this contract (including those of Articles 25 and 26) shall, *in the discretion of the contracting officer*, be subject to (1) any unsettled claims against the contractor for labor or materials, (2) reasonable deductions on account of defects in material or workmanship, and (3) any claims which the government may have against the contractor *under or in connection with this contract*. Any overpayments to the contractor shall, unless otherwise adjusted, be repaid to the government upon demand." (Emphasis added.)

Defendant contends that by so clearly providing for set-offs of claims arising under the contract, this clause impliedly excludes the set-off of debts not so arising.

---

1. There is suggested here a further question, which I do not reach in my view of the case, as to whether the contracting officer had the right or power to abrogate the government's contractual prerogative to liquidated damages. See, 14 Decisions of the Comptroller General of the United States 468 (1934).

■ It is settled that, as against a surety, the government has the general right to set off debts owed it by the primary obligor, even though such debts do not arise from the transaction as to which the surety makes its undertaking. United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). Defendant, however, urges that the United States can contract away, and here has contracted away, such right of set-off.

Concededly, the Supreme Court and at least one federal court have assumed that the sovereign, expressly or by implication, can contract in derogation of this right. See Munsey Trust Co., supra, at p. 243 of 332 U.S., at p. 1603 of 67 S.Ct.; Maryland Casualty Co. v. United States, 53 F.Supp. 436 (Ct.Cl., 1944). However, even supposing that this is so, several considerations require rejection of defendant's contention that the United States did so here.

■ The aim, of course, in the interpretation of contracts is to ascertain the actual intent of the parties. Corbin on Contracts, § 543, at p. 140. In seeking to do this, one must look to what was, or should have been, reasonably apparent to the contracting parties.

The recitation in Article 6(d) of the three items available to the government for set-off under these two contracts is preceded by the phrase "in the discretion of the contracting officer". This is a reasonably clear indication that the purview of the sub-section is restricted to matters within the competence and attention of the contracting officer. The tax liability of Allied not being such a matter, its omission from this sub-section should not be regarded as a cession of the right of tax offset by the United States.

The chief appeal of defendant's argument here lies in his assertion that, by withholding the partial payments from Allied, the government effectively disabled Allied from performing and so itself precipitated Allied's difficulties in performing these two contracts.[2] Indeed, as a general proposition, it might seem reasonable for the government to undertake to refrain from offsetting against partial or progress payments upon the practical consideration that to do so could seriously impair a contractor's capacity to proceed on the contract.

■ The difficulty with that argument in this case, however, is that the specified three items available for set-off against partial payments according to Article 6 (d) are repeated in Articles 25(e) and 26(e) with reference to the government's total liability and final settlement thereof. I find it unreasonable to ascribe to the government an intent to surrender its general rights of set-off as to its final obligations under the agreements. Since the contractual language in question should be uniformly construed in whatever article it appears, I conclude that no different intent should be attributed to the government respecting its set-off rights against partial payments to Allied.

■ For the foregoing reasons, defendant's motion for summary judgment is denied. As suggested hereinabove and as in effect conceded by the government, however, defendant is entitled to litigate its asserted defense that the government did not exercise due diligence in completing the contracts after Allied was "terminated".

So ordered.

---

2. See affidavit of counsel for defendant, at p. 2.