**A. Bates BUTLER, Trustee of Construction Materials Co., Appellant,**

**v.**

**PACIFIC NATIONAL INSURANCE COMPANY, aka Transamerica Insurance Company, and State of Arizona, David H. Campbell, Superintendent, Arizona Highway Department, Appellees.**

No. 21169.

United States Court of Appeals
Ninth Circuit.

March 6, 1967.

Rehearing Denied May 3, 1967.

Lawrence Ollason, Gerald B. Hirsch, Hirsch, Van Slyke & Ollason, Tucson, Ariz., for appellant.

James L. Richmond, Chandler, Tullar, Udall & Richmond, Tucson, Ariz., for appellees.

Before JONES, Judge, U. S. Court of Claims, and BARNES and ELY, Circuit Judges.

BARNES, Circuit Judge:

Construction Materials Company (hereinafter "contractor") contracted on July 28, 1963 with the State of Arizona to perform certain work on a road in the Tucson area. Upon undertaking the contract, the contractor furnished the State of Arizona a bond for faithful performance written by appellee Pacific National Insurance Company (now known as Transamerica Insurance Company). In the early part of November of 1963, when only part of the construction had been completed, the contractor found that it would be unable to complete the job. It thereupon contracted with Ashton Construction Company to have Ashton com-

plete the work. Ashton completed the contract in December and submitted a bill for $33,238.60 which the contractor was unable to pay. Pacific, as surety, arranged a settlement with Ashton and paid $31,000 in full satisfaction of Ashton's claim.

In late November the contractor filed under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799 and was adjudicated a bankrupt, appellant Butler being named trustee.

Pursuant to Ariz.Rev.Stat.Ann. § 34–221, subsec. A, par. 3, the state retained a portion of the money due the contractor under the contract, a total of $21,557.27. Pacific requested the state not to pay the contractor but to pay over these funds to Pacific as subrogee of Ashton. Butler, trustee of the bankrupt contractor, instituted the present action against the state to obtain the funds withheld. Pacific was brought in as a defendant, and the State of Arizona was allowed to withdraw upon depositing the retained funds with the court. Although the suit was originally brought within the bankruptcy jurisdiction of the court below, 11 U.S.C. § 11, the court found that diversity of citizenship also existed under 28 U.S.C. § 1332. We have jurisdiction under 11 U.S.C. § 47 and 28 U.S.C. § 1291.

The action in the stature in which it was decided was very similar to an action of interpleader. See 28 U.S.C. § 1335. The State of Arizona held funds to which there were two adverse claimants, and the sole issue for determination was which claimant, Pacific, the subrogee of a materialman, or Butler, the trustee in bankruptcy, had the superior claim. The court below decided that the State of Arizona had the right to use the funds to discharge the claim of materialmen and laborers, and therefore granted judgment for Pacific, prompting this appeal by Butler.

First, there can be no dispute that Pacific was subrogated to Ashton's claim, together with its priority, if any. Cf. Ariz.Rev.Stat.Ann. § 12–1643, subsec. A, which would have been applicable had Ashton reduced its claim to judgment.

This case is to be considered as though Ashton were claiming the funds in opposition to Butler rather than Pacific.

We thus reach the question whether one standing in the shoes of a materialman had a priority to these funds over the contractor's trustee in bankruptcy, who represents the general creditors. We hold that such a priority existed, but we also conclude that the trustee should be given the retained funds to distribute to the creditors claiming under this priority.

■ The law of Arizona with regard to retained funds is found in Ariz. Rev.Stat.Ann. § 34–221, subsec. A, par. 3, which provides:

"3. Ten per cent of all estimates shall be retained by the agent as a guarantee for complete performance of the contract, to be paid to the contractor within sixty-five days after completion or filing notice of completion of the contract, provided the contractor has furnished the agent satisfactory receipts for all labor and material bills and waivers of liens from any and all persons holding claims against the work."

The clear meaning of this provision is that the State of Arizona is under no obligation to pay over the withheld funds until all laborers and materialmen have been paid. Until such conditions had been fulfilled, there simply was no right in the bankrupt estate to the withheld funds. Although not expressed in the statute, the clear implication is that where those debts have not been paid, the retained funds shall be used for discharging them.

The case at bar is notably similar to Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). In Pearlman, a contractor had undertaken work on the St. Lawrence Seaway project and executed the required bonds. The contractor's financial difficulties caused the contract to be terminated, and the job was completed by another party. The surety for the original contractor had paid out about $350,000 for labor and material debts of the contractor, and sought some $87,000 in funds withheld by the government. The contractor's trustee in bankruptcy also sought the retained funds.

Mr. Justice Black, speaking for the majority in Pearlman, held that the surety had a priority to the retained funds. The priority existed because the surety acquired a property interest in the retained funds by subrogation from the laborers and materialmen. The reasoning was that the fund created by retention of percentages of payments was designed to protect suppliers and workers, so that a surety in their place had an equitable right to indemnification from the fund. Prairie State Nat. Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896). If the fund is created for the protection of laborers and materialmen, it will be useless if those persons do not have a priority for the satisfaction of their claims.

■ Pearlman was decided within the scope of claims against federal funds under a federal contract. But the reasoning of Pearlman seems equally applicable to the case at bar. The Arizona legislature commanded that funds be retained on public contracts until laborers and materialmen had been paid, for the clear purpose of protecting those persons from insolvent contractors. The only way to effectuate the purpose of the statute is to recognize a priority in such persons, under the reasoning of Pearlman, to the funds withheld.

Appellant Butler says that the decision of the Supreme Court of Arizona in Webb v. Crane Co., 52 Ariz. 299, 80 P.2d 698 (1938), militates against our conclusion that the laborers and materialmen have a priority. Webb v. Crane Co. stands for two propositions, that there can be no mechanic's lien on public property and that materialmen are third party beneficiaries of a contractor's performance bond given to the state. The first proposition is not inconsistent with our conclusion. In Pearlman the Court noted that a similar proposition (that there could be no mechanic's lien on federal property, United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947)) would not prevent laborers and

materialmen from having a priority in retained funds. The second proposition of Webb v. Crane Co. recognizes that it is sound public policy to protect the laborers and materialmen and in that sense supports our conclusion here.

We hold that the fund created under Ariz.Rev.Stat.Ann. § 34–221, subsec. A, par. 3 was designed for the protection of laborers and materialmen and that it would effectuate the purpose of that statute to recognize a priority in such persons to that fund. The reasoning in Webb v. Crane Co., supra, leads us to believe that the Supreme Court of Arizona would so hold. Ashton, as a materialman, would have been entitled to a priority against the retained funds, and Pacific, as surety, is subrogated to that priority.

The recent decision of this court in Kennedy v. Powell, 366 F.2d 346 (9th Cir. 1966), cert. denied, 386 U.S. 910, 87 S.Ct. 858, 17 L.Ed.2d 783 (U.S. Feb. 13, 1967), is clearly in point here. There the contractor had made a cash deposit with the State of Arizona under Ariz.Rev.Stat. § 32–1152 (1965) Supp.) to obtain a license to perform contracting services. When the contractor went bankrupt his trustee claimed the deposit, and the referee ordered the deposit paid over to the trustee. His order was affirmed by the district court. We held that the deposit was property of the bankrupt within 11 U.S.C. § 110(a), and affirmed the district court's order. Though it is not mentioned in this court's opinion, the district court's order, after affirming the trustee's possession of the funds, required that the deposit be distributed pro rata among the members of the class of creditors secured by Ariz.Rev.Stat. § 32–1152. Thus Kennedy v. Powell, supra, represents a recognition of the priority of the secured creditors, and is guiding authority for our disposition of the present case.

The retained funds in the present case are property of the bankrupt within the meaning of 11 U.S.C. § 110 (a). Therefore title vested in the trustee by operation of law as of the date of the filing of the bankruptcy petition. The

funds should properly be paid over to the trustee, who will be directed to distribute them pro rata among those creditors secured under Ariz.Rev.Stat. § 34–221, subsec. A, par. 3.

Reversed and remanded for further proceedings consistent with this opinion.