TRANSAMERICA INSURANCE
COMPANY, Plaintiff–
Appellant,

v.

The UNITED STATES, Defendant–
Appellee.

No. 91–5099.

United States Court of Appeals,
Federal Circuit.

July 9, 1993.

Opinion by Chief Judge Nies Dissenting
from Denial of Rehearing In Banc
July 26, 1993.

John V. Burch, Bovis, Kyle & Burch, Atlanta, GA, was on plaintiff-appellant's answer to Petition for Rehearing and Suggestion for Rehearing In Banc.

Stuart M. Gerson, Acting Asst. Atty. Gen., David M. Cohen, Director, Jeanne E. Davidson, Asst. Director and Richard E. Rice, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, were on the defendant-appellee's Petition for Rehearing and Suggestion for Rehearing In Banc. Of counsel was Terrence S. Hartman.

Edward G. Gallagher, Wickwire Gavin, P.C., Vienna, VA, was on the response of amicus curiae, American Ins. Ass'n in opposition to defendant-appellee's Petition for Rehearing and Suggestion for Rehearing In Banc.

ORDER

A combined petition for rehearing and suggestion for rehearing in banc having been filed by the APPELLEE, and a response thereto having been invited by the court and filed by the APPELLANT, and a response of amicus curiae having been filed with leave, and a judge of the court having requested an in banc poll.

UPON CONSIDERATION THEREOF, it is

ORDERED that the petition for rehearing be, and the same hereby is DENIED, and it is further

ORDERED that the suggestion for rehearing in banc be, and the same hereby is, DECLINED.

Chief Judge Nies, Circuit Judges Archer, Mayer and Michel voted to rehear the case in banc. Chief Judge Nies will file an opinion at a later date dissenting to the denial of in banc.

The mandate of the court will issue on July 16, 1993.

ON REQUEST FOR REHEARING
IN BANC

NIES, Chief Judge, with whom ARCHER, Circuit Judge, joins dissenting from the court's denial of rehearing in banc.

If the defendant here were not the government, a surety who performed on a defaulted contract might have attempted to attach money owing by defendant to the contractor on a different unrelated and undefaulted contract in order to obtain indemnification from the contractor who defaulted. The surety would have to institute attachment proceedings in response to which the defendant might interplead the contractor, deposit the money in court, and be protected from liability to either party. Absent such proceedings, mere notice to the defendant no more creates a right against the defendant who paid the contractor than payment to the surety would discharge the defendant's obligation to the contractor. Be that as it may, the surety in this case would lose because the defendant paid the money to the contractor before suit was brought and there would be nothing to attach.

The surety here, however, was faced with an insurmountable obstacle in attempting to reach any moneys in the hands of the gov-

ernment, even if the government had not yet paid the contractor. Because government funds owing to another may not be attached or garnished except in limited circumstances not applicable here, *see, e.g., United States v. Morton,* 467 U.S. 822, 831–32, 104 S.Ct. 2769, 2774–75, 81 L.Ed.2d 680 (1984) (applying 42 U.S.C. § 659), the surety seeks to avoid this disability by converting its right to indemnification from the contractor into a higher right of subrogation to such moneys due the contractor.

Having performed, the surety is subrogated to rights of both the contractor and the government. *Dependable Ins. Co. v. United States,* 846 F.2d 65, 67 (Fed.Cir.1988); *Security Ins. Co. v. United States,* 192 Ct.Cl. 754, 428 F.2d 838, 842 (1970) (quoting *Trinity Universal Ins. Co. v. United States,* 382 F.2d 317, 320 (5th Cir.1967), *cert. denied,* 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 873 (1968)). As an aside, the surety cannot claim, and does not assert, a right to subrogation to the contractor's right to payment under the undefaulted contract. The surety did not perform and, thus, acquired no subrogation rights under that contract. It is hornbook law that the fact the defendant has in his possession property of the contractor does not of itself entitle the surety to be subrogated for the contractor. Such equitable claim arises only as to assets pledged, or moneys due, under the contract the surety performed. Stearns & Elder, *The Law of Suretyship* § 11.13, p. 47 (1972); *accord Dependable Ins. Co.,* 846 F.2d at 67; *Security Ins. Co.,* 192 Ct.Cl. 754, 428 F.2d at 844. Thus, the surety's only hope is to find subrogation rights acquired from the government. To this end the surety argued that, if the government had had to complete the defaulted contract, the government could have setoff the loss it suffered relating to that contract against moneys owed the contractor on the non-defaulted contract. From this reconstruction of the events, the surety urged that it was entitled to subrogation to the government's "right of setoff" *against* the moneys owed the contractor.

One difficulty with this analysis is that the government's right of setoff, to which the surety is now held to succeed, is nonexistent.

Unless and until the government itself performed the defaulted contract, which it did not do, it had no "setoff" against the contractor. Further, it is unknown what the excess cost, if any, to the government over the contract price would have been, had the government completed the contract. Next, once the surety performed, even the government's latent or potential right of setoff disappeared. And finally, it is well established that, even where the defendant creditor (here, the government) has a setoff in fact, it need not apply the setoff to the benefit of the surety. *See Stearns* at § 6.51, pp. 191–92 and cases cited therein. Thus, any right of setoff against the contractor is one that the government may use or not, as it chooses. The panel decision mandates that the setoff be exercised by the government to cover the costs of the surety in completing the defaulted contract. In effect, the surety has been discharged from its full obligation to the government, even if the government had a setoff which it does not.

Under traditional subrogation principles, "it is elementary that one cannot acquire by subrogation what another whose rights he claims did not have." *United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947); *United States v. California,* —— U.S. ——, ——, 113 S.Ct. 1784, 1790, 123 L.Ed.2d 528 (1993) (similar language). As this court has previously held:

> a completing surety does not become subrogated to "all of the government's rights," only the rights of the government on the contract of which it completes performance.

*Dependable Ins. Co.,* 846 F.2d at 67–68. Prior case law is to the same effect. *Security Ins. Co.,* 192 Ct.Cl. 754, 428 F.2d at 841. By failing to adhere to this precedent, the panel has created subrogation rights where none exist. The government never suffered a loss on the defaulted contract which would give rise to a setoff against payments due the contractor on the unrelated contract. Thus, the surety, who asserts only a right to step into the shoes of the government, has no government shoes into which to step. That should end the matter.

The decision of this court puts a surety in a position to stop performance of an undefaulted contract simply by notice to the government that it seeks money due the contractor on an unrelated contract. No principle of subrogation applicable between private parties supports that result. It cannot be the law of subrogation that the government has a duty to a surety, upon notice that the surety has a claim against the contractor, voluntarily to stop performance, in other words, breach its contractual duty to pay the contractor, and bring an interpleader suit to settle equities between the contractor and the surety.

Clearly, the government cannot decide who has the better equities, the surety or the contractor. It is not even in a position to know or assert the equities of the contractor or other creditors of the contractor. Only a court can make such determination. But under this decision, mere notice by a surety is held in effect to enjoin the government from proceeding on an undefaulted contract. As stated in *United States v. California*, — U.S. at —, 113 S.Ct. at 1791 (quoting *Offer v. Superior Court of San Francisco*, 194 Cal. 114, 228 P. 11, 12 (1924)):

> "[A] surety by payment does not become *ipso facto* subrogated to the rights of the creditor, but only acquires a right to such subrogation, and ... before the substitution or equitable assignment can actually take place he must actively assert his equitable right thereto. It is not a substantive tangible right of such nature and character that it can be seized and held and enjoyed independently of a judicial proceeding."

Yet the panel terms the government's payment to the contractor "wrongful". This condemnation is legally unsupportable.

The subrogation claim of the surety in this case has more of an Alice in Wonderland character than the claim of the surety in *Munsey Trust*, who sought to be subrogated to nonexistent rights. The panel concludes, first, that the government has a setoff claim against the contractor (because the government could have completed the contract itself) and, second, that the government had no claim to the contractor's money and is only a stakeholder (because the surety performed). As stated in *Munsey Trust*:

> [A subrogee] cannot jump back and forth in time and present himself at once as the unpaid claimant [i.e., the government] and again [as the government], under the conditions as they have changed, because payment is made.

332 U.S. at 242, 67 S.Ct. at 1603. If time warp were not enough of a distortion, the panel converts the government's right to *setoff*—a limited right—into a stand-alone *claim* which can be asserted *against* the government. The surety does not want a mere setoff claim to assert against any demand by the contractor; it wants money from the government.

Obviously, if the government were legally obligated to pay the surety, it is entitled to reimbursement from the contractor. But just as obviously, the surety could have sued the contractor instead of the government. The undercurrent here is that the contractor is insolvent and, thus, the government will have to pay twice.* But, as also has been stated with respect to upholding phantom subrogation rights:

> It is the surety who is required to take risk. We have no warrant to increase the risks of the government.

332 U.S. at 244, 67 S.Ct. at 1604.

For the foregoing reasons, I voted to take this case in banc. The decision of the United States Court of Federal Claims should be affirmed.

---

* While the panel states that no one else has any claim to the moneys, in fact all that can be said on the record before us is that no one else is in this lawsuit or has its interests represented here. If the government's reimbursement claim takes precedent against funds of an insolvent contractor, other creditors of the contractor are prejudiced by the withdrawal of the amount from general funds of the contractor. In effect the surety has been given priority over other general creditors. The equities of other creditors of the contractor must be taken into account. This is because with respect to assets of the contractor unrelated to the contract on which the plaintiff is surety, the surety stands in the same position as any other creditor of the contractor. *Dependable Ins. Co.*, 846 F.2d at 67.