**UNITED STATES of America**

v.

**Terry SPARGER.**

**No. MO–98–113M.**

United States District Court,
W.D. Texas,
Midland–Odessa Division.

Dec. 30, 1999.

---

Adelaide G. Few, Assistant United States Attorney, Tampa, FF, Harold Atkinson, Assistant United States Attorney, San Antonio, TX, for United States.

---

Glen D. Aaron, II, Midland, TX, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING GOVERNMENT'S MOTION TO DIRECT CLERK TO PAY PARTIAL AMOUNT OF DEFENDANT'S RESTITUTION FROM COURT REGISTRY

PLATT, United States Magistrate Judge.

BEFORE THE COURT is the Motion by the United States Attorney's Office for the Middle District of Florida, Tampa Division, requesting an order from this Court directing the Clerk to remit the sum of five thousand dollars ($5,000), plus interest, from the Court Registry to the United States of America as partial payment towards defendant's criminal restitution, filed October 29, 1999. A hearing was conducted on December 8, 1999.

After careful consideration of the Motion, evidence, arguments of counsel, and the relevant law, the Court is of the opinion that the Government's Motion should be **DENIED.**

### BACKGROUND

The central issue before the Court is whether the United States is entitled to $5,000 that was posted as cash a bond by the Defendant's attorney, Glenn Aaron.

At the evidentiary hearing concerning this Motion, the defendant in the above-captioned case. Terry Sparger, testified that sometime around May of 1998 he was the subject of a federal investigation. As a result of this investigation, Mr. Sparger was served with a subpoena duces tecum to appear before a Florida grand jury with certain business records. Mr. Sparger hired attorney Glenn Aaron to represent him in this matter, which Mr. Aaron did. During the course of this representation, Mr. Sparger paid Mr. Aaron an hourly fee. Mr. Sparger paid between four and five thousand dollars ($4,000 to $5,000) in legal fees to Mr. Aaron.

Subsequent to the investigation, Mr. Sparger was criminally indicted. Again,

Mr. Sparger requested that Mr. Aaron represent him in the matter. According to Mr. Sparger, Mr. Aaron agreed to represent him; however, Mr. Sparger would have to put up a twenty thousand dollar ($20,000) retainer fee. Mr. Sparger cashed in three certificate of deposits, which totaled thirty thousand dollars ($30,000), and he paid Mr. Aaron, in cash, the twenty thousand dollar retainer fee ($20,000).

Mr. Sparger surrendered to the United States Marshal's Service in Midland, Texas. This Court set the conditions of release for Mr. Sparger, which included an appearance bond in the amount of $5,000 to be deposited with the Clerk of the Court. Mr. Aaron posted Mr. Sparger's bond by depositing $5,000 in cash in the Clerk's Office in Midland, Texas. This is corroborated from the receipt issued by the Clerk's office. The money used by Mr. Aaron was part of the $20,000 retainer fee paid by defendant Sparger. Mr. Sparger made all of his required bond appearances, and he ultimately pled guilty to the charge(s).

On October 1, 1999, a judgment was entered against the defendant, Terry Sparger, in the United States District Court for the Middle District of Florida. As part of the judgment, the defendant was required to pay restitution to the United States in the amount of seventeen thousand six hundred eighty dollars ($17,680.00) and a special assessment in the amount of fifty dollars ($50.00).

Pursuant to 28 U.S.C. § 2044, the United States Attorney's Office in the Middle District of Florida filed this Motion requesting that the cash monies used to post the defendant's appearance bond be released from the Clerk's Office in Midland, Texas, and be made payable to Florida's Clerk of Court in order for the money to be used to partially satisfy the defendant's criminal restitution debt.

Prior to this Motion being filed, Glen Aaron made application for return of the

cash bail deposited in the Midland Clerk of Court's Registry on October 18, 1999.

## DISCUSSION

The Government's position is rather straight forward. The Government maintains that pursuant to 28 U.S.C. § 2044 the United States is entitled to the $5,000, which was posted as a cash bond by the defendant's attorney. The statute provides:

> On motion of the United States attorney, the court shall order any money belonging to and deposited by or on behalf of the defendant with the court for the purposes of a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and before sentencing except upon a showing that an assessment, fine, restitution or penalty cannot be imposed for the offense the defendant committed or that the defendant would suffer an undue hardship. This section shall not apply to any third party surety.[1]

28 U.S.C. § 2044 (this statute was passed in 1990, and it took effect in early 1991; *see* Federal Debt Collection Procedures Act of 1990, Pub.L. No. 101–647, 104 Stat. 4933).

### 1. Analysis

The Court has been able to find only two published decisions and one unpublished decision concerning the statute set out above. *See United States v. Higgins*, 987 F.2d 543 (8th Cir.1993) (focusing on two subjects that are not of concern here, first, whether § 2044 applies to bonds posted before the enactment of the statute, and

second, whether § 2044 violates the Eighth Amendment's prohibition against excessive bail); *United States v. Equere*, 916 F.Supp. 450 (E.D.Pa.1996) (focusing on a *subject which is of concern here*, whether the statute applies to monies posted by third parties); *United States v. Harris*, 1996 WL 291200 (E.D.La. May 29, 1996) (applying a two part test to § 2044). The Court finds the *Equere* case very persuasive here, especially in light of the Fifth Circuit's views on attempts to use bail money to satisfy criminal fines prior to the enactment of 28 U.S.C. § 2044.

### (a) *Fifth Circuit Cases Prior to Section 2044*

Prior to the enactment of 28 U.S.C. § 2044, the Fifth Circuit was confronted with the issues of whether bail money paid by a third party could be used as a partial payment for a criminal fine, *United States v. Jones*, 607 F.2d 687 (5th Cir.1979), and whether bail money paid by a defendant could be used as a partial payment for a criminal fine, *United States v. Powell*, 639 F.2d 224 (5th Cir. Unit A 1981). In both instances, the Fifth Circuit answered in the negative. In addition, in *United States v. Rose*, 791 F.2d 1477 (11th Cir.1986),[2] the court addressed the issue of whether a bail bond condition requiring the defendant to pay a fine, if imposed and affirmed on appeal, was at odds with both the Eighth Amendment prohibition against excessive bail and the Bail Reform Act. The court answered this question in the affirmative. Although these cases are not controlling here, they are an important illustration of the Fifth Circuit's long-standing view toward the proper treatment of appearance bonds when the defendant has satisfied the conditions of the bond.

In *Jones*, the defendant's wife posted a ten thousand dollar ($10,000) cash bond for

---

1. The Government omitted the latter part of this statute when quoting it to the Court in its Motion.

2. Although technically this is an Eleventh Circuit case, in *Bonner v. City of Prichard*, 661

F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent all decisions of the Fifth Circuit decided prior to October 1, 1981.

release of her husband pending trial. The defendant later pled guilty to his charged offense, and the district court imposed sentence and fined him fifteen thousand dollars ($15,000). Several days before the sentencing, however, the defendant's wife assigned the cash bail to defendant's lawyer, who later applied for return of the bail money. The government filed a motion stating that the purpose of defendant's bond had been served, but the bail money should be used as partial payment of the outstanding $15,000 fine. The district court agreed and granted the government's motion, and the defendant appealed. *Id.* at 687.

On appeal, the Fifth Circuit held that a district court could not order payment of fines to the government from bond money posted by a third party. The court indicated in its holding that it would likely reach the same result even if the bail money belonged to the defendant. *Id.* at 688. In reaching its conclusion, the court recognized that Rule 46(f) of the Federal Rules of Criminal Procedure prescribes that "[w]hen the condition of the bond has been satisfied ... the court shall exonerate the obligors and release any bail." *Id.* at 687–88. The court noted that the government conceded that the conditions of bond had been satisfied.

Furthermore, the court found the only purpose to be served in requiring a cash deposit is to make it available to satisfy a forfeiture in the event of a willful default of the principal. The court reiterated that the purpose of bail is to secure the presence of the defendant, and like any other contract a bail bond should be construed to give effect to the reasonable intentions of the parties. *Id.* at 688 (citations omitted). Therefore, because the cash bond was posted by the defendant's wife, not the defendant, and she later assigned the bail money to an attorney, the court remanded the case so a determination could be made as to the validity of the assignment.

The government in *Jones* argued that "the United States, as a creditor, has the same right as other creditors to apply a debtor's money that is in its possession to extinguish debts due." *Id.* The government cited to *United States v. Munsey Trust Co.*, 332 U.S. 234, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), for support of the argument. The court rejected this argument because it determined that the United States was not a creditor in possession of the debtor's money. Instead, the court found that the money was held by the clerk's office under the terms of a specific agreement—Rule 46(f). *Id.*

In *Powell*, the Fifth Circuit relied upon the rationale in *Jones* and extended its holding to include bail money paid by the defendant. *Powell*, 639 F.2d at 225. In *Powell*, the government sought payment of a criminal fine out of funds deposited in the registry of the court by the defendant for an appearance bond. *Id.* at 224. The court held that a district court could not order payment of fines to the United States from bail monies deposited with the court. *Id.* at 225.

The *Powell* court's reasoning was really just an extension and clarification of the reasoning used by the *Jones* court. The reasoning was threefold. First, the court held that the "purpose of bail is to secure the presence of the defendant, its object is not to enrich the government or punish the defendant." *Id.* (citations omitted). Second, the court found, "[l]ike any other contract, a bail bond should be construed to give effect to the reasonable intentions of the parties, with the understanding that the construction should be in favor of the surety who may not be held liable for a greater undertaking than agreed to." *Id.* Finally, the court rejected the government's argument that fines could be paid directly form bail monies because the United States, as a creditor in possession, had the same right as other creditors to apply a debtor's money to extinguish debts due. The court found that the **"clerk of court holds the cash bail under terms of a specific agreement,"** and concluded that the **"United States as creditor is not in**

**possession of the debtor's money."** *Id.* at 226 (emphasis in original).

In *Rose,* the Eleventh Circuit held that a bail bond condition requiring the defendant to pay a fine, if imposed and affirmed on appeal, was at odds with both the Eighth Amendment prohibition against excessive bail and the Bail Reform Act, 18 U.S.C. § 1342. *Rose,* 791 F.2d at 1479–80. In line with *Powell,*[3] the *Rose* court reasoned, "[t]he purpose of bail is to secure the presence of the defendant, its object is not to enrich the government or punish the defendant." *Id.* at 1480. The court then found:

> We have no doubt that the addition of any condition to an appearance bond to the effect that it shall be retained by the clerk to pay any fine that may subsequently be levied against the defendant after the criminal trial is over is for a purpose other than that for which bail is required to be given under the Eighth Amendment. Such provision is therefore "excessive" and is in violation of the Constitution.

*Id.*

These cases illustrate that the Fifth Circuit (and to some extent the Fifth Circuit's rationale) has equated the bond/bail relationship as one of contract, and if the defendant satisfied the conditions of the bond (contract), then it was mandatory that the courts exonerate the obligors and release any bail. Although this Court is absent any authority to make a constitutional determination concerning this statute, given this Circuit's long-standing position toward bond/bail money, suffice it to say that it is this Court's opinion that the statute is "excessive" in the sense of the Eighth Amendment because it is being used to "serve a purpose for which bail was not intended. The purpose of a bail bond is to insure that the accused will reappear at a given time by requiring another to assume personal responsibility for him, on penalty of forfeiture of property." *Cohen v. United States,* 82 S.Ct. 526, 528, 7 L.Ed.2d 518 (1962) (not reported in the United States Reports) (citing 4 Blackstone, Commentaries 380 (Hammond ed. 1890)).

**(b) *Section 2044, Third Parties, and Equere***

The United States District Court for the Eastern District of Pennsylvania was confronted in *United States v. Equere,* 916 F.Supp. 450 (E.D.Pa.1996), with the issue of whether bail money posted by a defendant's brother should have been returned to the brother or held by the government to be applied to the defendant's unpaid criminal fine.

In *Equere,* the defendant's brother posted cash bail in the amount of two thousand five hundred dollars ($2,500) on behalf of the defendant, to secure the defendant's appearance in court for a criminal matter. It was undisputed that the money belonged to the brother. The defendant did appear in court, pled guilty, and was sentenced. As a part of the defendant's sentence, he was ordered to pay a five thousand dollar ($5,000) fine and a fifty dollar ($50) assessment. However, the brother's bail money was not returned. Therefore, the brother filed an application for return of cash bail, and the government responded that they were under no obligation to return the money because the defendant had failed to pay any portion of his $5000 fine. For authority, the government relied on 28 U.S.C. § 2044, which is set out above. *Id.* at 451–52.

The district court found that the plain meaning of the statute did not support the government's claim. *Id.* at 452. According to the court,

> Section 2044 grants courts authority to transfer bail funds if a defendant's own money has been used to post bond. The statute, however, does not extend such authority to a situation like the present case, in which a third party, not the defendant, has provided his own money to post defendant's bail. The statute

---

**3.** *See supra* note 2.

states that "the court shall order any money belonging to and deposited by or on behalf of the defendant" be applied to the payment of any fine or penalty. This language delineates the strict parameters of the statute, specifically preventing the government from using the statute as authority in cases such as the present one.

Any other interpretation of the statute is unworkable. For example, the government may be under the false impression that the statute applies either to (1) money belonging to and deposited by defendant or to (2) money owned by a third party and deposited on behalf of the defendant. However, the wording of the statute precludes this possibility: if the phrase "the court shall order any money belonging to and deposited by or on behalf of the defendant" is read according to the second interpretation, it would be missing an operative word (such as "deposited") and would not make sense: "the court shall order any money . . . on behalf of defendant."

*Id.*

Therefore, the district court in *Equere* interpreted the statute "according to its plain, logical and practical meaning: it applies only to 'money belonging to' the defendant, which has been 'deposited by' the defendant or 'on behalf of the defendant,' and does not apply to money owned by a third party." *Id.* Moreover, there is a disclaimer at the end of the statute which lends further support to this interpretation of the statute. The statute states, "[t]his section shall not apply to any third party surety," thus reinforcing the notion that the money provided by a third party is not within the purview of the statute.

4. The Court cautioned Mr. Aaron at the evidentiary hearing about an attorney posting bail for his client. The Court informed Mr. Aaron that there was a Local Rule for the Western District of Texas addressing this issue. The Court has since been informed that there is a Rule addressing the issue; however, it was inadvertently omitted from the latest printing of the Local Rules. The Court has been assured that the Rule will be included in the next publication of the Local Rules. In

## 2. Matter Before the Court

Mr. Sparger payed Mr. Aaron based upon an hourly rate when Mr. Sparger retained Mr. Aaron to represent him during the grand jury proceedings. Once Mr. Sparger was indicted, he and Mr. Aaron entered into an oral agreement, whereby Mr. Aaron would represent Mr. Sparger in the matter conditioned upon Mr. Sparger paying a $20,000 retainer fee to Mr. Aaron. Mr. Sparger cashed in three certificate of deposits, which totaled $30,000. At which time, Mr. Sparger paid Mr. Aaron the $20,000 retainer fee in cash. Mr. Sparger then surrendered to the United States Marshal's Service, and this Court set his conditions for release, which included the posting of a cash appearance bond. Mr. Aaron posted, in cash, Mr. Sparger's $5,000 appearance bond. The $5,000 was part of the $20,000 retainer fee that Mr. Sparger paid Mr. Aaron. Mr. Sparger made all of his court appearances, thereby, satisfying the conditions of his appearance bond.

This Court agrees with the court in *Equere* that the statute does not apply to bail monies posted by third parties. Once the retainer money was paid by Mr. Sparger to Mr. Aaron, the $20,000 became the money of Mr. Aaron. And as such, the $5,000 used to pay the cash bond by Mr. Aaron was Mr. Aaron's money, i.e. he was a third party when he posted the bail.[4]

Based upon the Fifth Circuit's position concerning the purpose of bail money and adopting the *Equere* court's interpretation of Section 2044, the Government's Motion should be DENIED, and Mr. Aaron's Application for the return of the bail money posted by him should be returned.

the meantime, however, the Court would call Mr. Aaron's attention to Local Rule CV-65.1.(a), which provides in relevant part: "No . . . attorney . . . will be accepted as surety, either directly or indirectly, on any bond or undertaking in any action or proceeding in this Court, nor shall any such person advance or provide money or other thing of value for any cost, bail, attachment or replevy bond taken in this Court."

## CONCLUSION

For the reasons stated above, this Court finds that the $5000 cash appearance bond was posted by a third party; that the defendant satisfied the conditions of his appearance bond; and that Section 2044 does not apply to bail money belonging to third parties. Accordingly, the Government's Motion for an Order Directing the Clerk to Pay Partial Amount of Defendant's Restitution from the Court Registry is hereby **DENIED.** The Court will address Mr. Aaron's Application for Return of Cash Bail in a separate order.

**IT IS SO ORDERED.**