**WEST PHILADELPHIA FEDERAL SAVINGS AND LOAN ASSOCIATION**

v.

**UNITED STATES of America.**

Civ. A. No. 37630.

United States District Court
E. D. Pennsylvania.

July 27, 1966.

Zoob, Cohan & Matz, for plaintiff.

Drew J. T. O'Keefe, by James C. Lightfoot, for defendant.

### OPINION

JOHN MORGAN DAVIS, District Judge.

The plaintiff, West Philadelphia Federal Savings & Loan Association, insti-

tuted this action against the United States to recover the moneys paid out for the redemption of certain Series "E" United States Savings Bonds. The matter now before us is the Government's motion for summary judgment. The salient facts are not in dispute.

In the spring of 1962, one Herman G. Blendon took some $1,736.64 worth of "E" bonds into the office of the plaintiff for redemption. The bonds were made out in the name of Ida DeFelice and in some instances in the name of Ide De Felice or Marie DeFelice and Ida De Felice or Linda DeFelice. Ida DeFelice had apparently endorsed all the bonds but she had not made the endorsement in the Savings and Loan Association or in the presence of any of its officers or agents and was not present when Herman Blendon presented them for redemption.

The plaintiff, however, paid part of the proceeds of the bonds to Herman Blendon outright and placed the remainder into a savings account of which he and Ida De Felice were co-tenants with right of survivorship.

Ida DeFelice and later her guardian [1] took steps to have duplicate bonds issued to her. The government did so in 1964 pursuant to 31 CFR 315.25, et seq.

In October of 1964, the plaintiff forwarded to the Federal Reserve Bank of Philadelphia for redemption Series "E" Bonds in the amount of $1,776.20. The government set off $1,736.64, which was the amount of the DeFelice bonds already paid, and returned the difference of $39.56. The plaintiff then sued the government for the amount of the set-off.

There is no doubt that the government has the same right as any creditor to apply unappropriated funds of the debtor in its hands to extinguish debts due. See United States v. Munsey Trust

Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). The question remaining therefore is whether the plaintiff acted outside the scope of its authority in redeeming the DeFelice bonds.

Pursuant to 31 U.S.C. § 757c(h) and in accordance with an "Application Agreement" signed by one of its officers on August 27, 1947, the plaintiff was designated as a paying agent of the United States for the purpose of redeeming United States Savings Bonds. In consideration of this appointment, the plaintiff agreed "to be bound by and to comply with the provisions of Treasury Department Circular No. 750, Revised, [31 CFR §§ 321.1–321.19] including all supplements and amendments thereof and instructions issued thereunder."

The pertinent portions of the Treasury Regulations [2] which were in effect at the time of the redemption of the DeFelice bonds are as follows:

31 C.F.R. § 315.15: "Savings bonds are not transferable and are payable only to the owners named thereon, except as specifically provided in these regulations, and then only in the manner and to the extent so provided.

31 C.F.R. § 321.7 "In order to protect the interest of the owners and to insure receipt by the proper persons of the proceeds thereof, savings bonds are registered, are not transferable, and in accordance with their terms, are payable only to the owner named on the bond (except as otherwise specifically provided in the regulations governing the bonds); they may not be used as securities for loans or advances in any form. This policy must be understood and effectuated by each agent, notwithstanding the authority granted herein to make payments of bonds, since it is of the utmost importance that payment of the appropriate redemption value of the bonds be made only to and received by the

1. Ida DeFelice was adjudged incompetent by the Orphans Court of Philadelphia County in July of 1962 as a result of injuries she suffered in an automobile accident in February of that year.

2. These Treasury regulations have the force of law.

persons entitled and strictly under the terms and conditions of the bonds and applicable regulations.

31 C.F.R. § 321.8 "Subject to the terms of the bonds and to the provisions of the regulations governing them * * * and the provisions of this part, an agent may make payment of any United States Savings Bonds of Series * * * to the individual (natural person) whose name is inscribed as the owner (or co-owner) in his own right on the bond: *Provided,* That such individual presents the bond to the agent for payment and that the individual is known to the agent or establishes his identity to the complete satisfaction of the agent.

31 C.F.R. § 321.9: "An agent is not authorized to pay a bond: (b) If the agent does not know or cannot establish to its complete satisfaction the identity of the person requesting payment as the owner of the bond * * *"

In addition the bonds themselves have printed on the reverse side the following certification for the signature of the paying agent.

"I certify that the above named person [Ida DeFelice] whose identity is well known or proved to me signed the above request in my presence, acknowledging the same to be his free act and deed."

"Paying agent and certifying officers should require positive identification of the person signing the request and will be held fully responsible therefor".

These regulations and the inscription on the bonds proscribe a paying agent from redeeming Savings Bonds for anyone except the owner.[3]

They set forth the specific requirement that the owner appear in person and establish his identity. The patent purpose of these rules is to obviate, as much as possible, fraud, peculation and other such misconduct in connection with the cashing of these securities.

The plaintiff argues, however, that at least as far as the money placed in the joint savings account of Ida De Felice and Herman Blendon is concerned, it acted within the spirit, if not the letter of the regulations since Miss De Felice was a co-tenant of that fund. This argument is completely without merit, for nothing prevented Blendon from withdrawing all the money in the account for his own use and benefit.

The Treasury regulations were promulgated to avoid the very type of situation that occurred in this case, and the plaintiff may not ignore them with impunity.

The plaintiff exceeded its authority, causing the government a loss of $1,736.64. The latter had a right to set off this amount from other monies of the plaintiff in its possession and is now entitled to summary judgment.

---

3. There are certain exceptions not relevant here.