**BANK LEUMI TRUST COMPANY OF NEW YORK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 399–85C.**

United States Claims Court.

June 30, 1987.

Ronald M. Neumann, New York City, for plaintiff; Ira S. Newman, of counsel.

Linda T. Maramba, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

This refund action for funds lost redeeming Treasury Bonds by fraud is before the court on cross motions for summary judgment. At issue is whether plaintiff, Bank Leumi Trust Company, was negligent in redeeming the bonds and whether plaintiff's actions resulted in the loss to the United States.

### FACTS

Mr. Teplin, a suspended lawyer previously convicted of fraud, maintained a checking account with plaintiff from 1976 through 1979, and had been a customer of the bank since 1971. Teplin was personally known by Ms. Mackey, an officer with

plaintiff since 1976, as a customer, borrower, and as the uncle of Stuart Weiner, a senior officer of the bank who was also Ms. Mackey's direct supervisor.

In July, 1979, Teplin informed Ms. Mackey that an elderly, near-invalid client of long standing wanted to cash some Treasury Bonds, but did not have a local banking account. Teplin opened a checking account with plaintiff in the name of "George Lederman", utilizing a notarized power of attorney form and signature cards signed by a "George Lederman".

From July 6 through August 3, Teplin presented 158 United States Treasury Bonds, registered to and signed by "George Lederman", to plaintiff. Ms. Mackey accepted these bonds for payment, signed the back of the bonds attesting that the presenter was the named owner of the bond and credited the proceeds to Lederman's account. "Lederman" was never present when the bonds were redeemed. Soon after the bonds had been redeemed and Lederman's account credited, large cash withdrawals were made from the account. Concerned with the large amount of money withdrawn, Nancy Mulligen, an officer for Bank Leumi, insisted that Teplin be directed to bring "Lederman" to the bank to re-sign each of the bonds personally in the presence of a bank officer. Almost 6 weeks after the first bonds were redeemed, Teplin arrived at the bank with an elderly man whom he identified as "George Lederman". "Lederman" then re-signed 156 bonds [1] in the presence of Ms. Mackey. "Lederman" was also required to provide the officer with two pieces of identification. Ms. Mackey accepted as identification an expired drivers license and a social security card, both of which were retained as a part of plaintiff's records.

Following the receipt of the "Lederman" bonds from plaintiff, the Bureau of the Public Debt determined that the bonds had been stolen from the real George Lederman who had died in 1976. New bonds were issued to the original co-owners and the matter was referred to the Secret Ser-

---

1. The court is not aware of why the other two bonds were not similarly re-signed but that lack of information is not necessary to complete adjudication of the case at bar.

vice for investigation. The man appearing to be "Lederman", a stand-in, disappeared, and Teplin came under investigation. The Bureau of Public Debt then declined to relieve plaintiff from liability for redeeming the bonds registered to "George Lederman". Plaintiff's request for reconsideration was also denied by the examining board and plaintiff paid $111,192.85 to the Bureau. In July, 1985, plaintiff commenced this action to recover the money paid.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). The court agrees with the parties that there are no genuine issues of material fact in dispute and that the case is properly before the court on cross motions for summary judgment.

Plaintiff wishes to recover the value paid to the government for bonds that were fraudulently presented to the bank. When losses on United States Treasury Bonds are incurred by the Government, the paying agent: "shall be relieved from liability to the United States for such losses, upon a determination by the Secretary of the Treasury that such losses resulted from no fault or negligence on the part of the ... paying agent." 31 U.S.C. § 757c(i) (1976), *amended by*, 31 U.S.C. § 3126(a) (1982).[2] The burden of proof lies on the paying agent, plaintiff, when a loss is incurred. *Id.* Thus, the issues are whether a) plaintiff was negligent in redeeming the "Lederman" bonds, and whether b) plaintiff's negligence resulted in the loss.

### A. *Negligence*

■ An agent's standard of conduct in redeeming bonds may be established by a legislative enactment or administrative regulation. *See* Restatement (Second) of Torts § 285(a) (1965). The violation of a statute

or regulation may be evidence of negligence. *Vu v. Singer Co.*, 538 F.Supp. 26, 32 (N.D.Cal.1981), *aff'd*, 706 F.2d 1027 (9th cir. 1983), *cert. denied*, 464 U.S. 938, 104 S.Ct. 350, 78 L.Ed.2d 315 (1983); *Guinan v. Famous Players-Lasky Corp.*, 267 Mass. 501, 516, 167 N.E. 235, 242 (1929).

■ The regulations governing the redemption of bonds expressly state that bonds may be redeemed only when presented by the owner or co-owner named on the bonds. 31 C.F.R. § 321.7 (1979); 31 C.F.R. § 321.8 (1979); 31 C.F.R. § 321.10 (1979); 31 C.F.R. § 321.12 (1979). Nevertheless, Mr. Teplin was allowed by plaintiff to present and redeem the bonds even though he was not the named owner of the bonds. There is no exception to the requirement that bonds may be redeemed only when presented by the named owner for a person acting under a power of attorney. Memoranda of Instructions Issued In Conjunction with Department Circular No. 750, Second Revision, P. 7. Thus, plaintiff violated banking regulations when it allowed Mr. Teplin to redeem the bonds owned by "Lederman".

The governing regulations also require that: "[T]he request for payment on the back of the security [must] be executed by the presenter in the presence of one of its officers or authorized employees...." 31 C.F.R. § 321.12(2)(c) (1979). When Mr. Teplin presented the bonds for redemption, the request for payment on the reverse side of the bonds had already been executed by "Lederman."[3] Plaintiff, did not require reexecution of the request prior to redeeming the bonds. It is apparent to the court that Ms. Mackey was never fully instructed by her superiors that such reexecution was required, rather, she was told by her operations manager to simply "guarantee the signature" that appeared on the back of the bond.

Upon execution, the officer for the agent must sign the back of each bond certifying

---

**2.** Although the amendment did not substantively alter the provision, 31 U.S.C. § 757c(i) (1976) was the applicable statute when the bonds were redeemed in 1979.

**3.** A bond is considered to be executed when the presenter signs the back of the bond upon redemption. 31 C.F.R. § 321.12(2)(c) (1979).

that "the above named person whose identity is well-known or proved to me signed the above request in my presence, acknowledging the same to be his free act and deed." However, Ms. Mackey made the above certification each time Teplin presented the bonds, knowing full well that Teplin was not "Lederman". Although plaintiff characterizes this and other violations as "minor", the court considers this as another example of plaintiff's incomplete and incorrect bond execution procedure.

■ Plaintiff argued that it was able to cure the faulty redemptions of the "Lederman" bonds by requiring "Lederman" to reexecute the bonds in Ms. Mackey's presence. The regulation governing reexecution states that "[w]here [a] request has already been executed when the security is presented, it should ordinarily be reexecuted." 31 C.F.R. § 321.12(2)(c) (1979). Lederman's subsequent reexecution, however, was done too late because the bonds had been redeemed, "Lederman's" account had been credited, and money had been withdrawn from that account. The bonds were redeemed when Lederman's account was credited, and not when the bonds were presented by plaintiff to the treasury, as plaintiff contends.[4] It was almost 6 weeks from the time the first bonds were redeemed before Lederman reexecuted the bonds. This attempted "cure" was made after the fact, and therefore cannot be considered a valid reexecution.

Assuming, *arguendo*, that the reexecution was a proper cure for the faulty redemption of the "Lederman" bonds, plaintiff further failed to fully comply with the regulations governing bond redemptions. Upon redemption, the agent must require that the presenter be properly identified in accordance with with Identification Guide. 31 C.F.R. § 321.12(2)(b) (1979). The types of identification that may be employed are: customer identification, personal identification or documentary identification.

■ Plaintiff contends that it was able to establish personal identification when "Lederman" reexecuted the bonds. Personal identification requires that: 1) the identifier be a customer or personally known to an officer of the paying agent, 2) the agent determine whether the identifier knows the presenter by the name inscribed on the bond, 3) the source and duration of the acquaintance with the presenter are such as to make an identification reliable, and 4) the identifier place his signature on the back of the bond. Identification Guide, p. 2. Contrary to the signature requirement, the identifier of "Lederman", Mr. Teplin, did not place his signature on the back of the redeemed bonds. Thus, no valid personal identification was made.

■ Although plaintiff argued that it materially complied with the requirement for personal identification and that the failure to place Teplin's name on the back of the bonds did not nullify the identification, compliance with the "spirit" of the regulations was insufficient and ignorance of the regulations cannot be done with impunity. *West Philadelphia Federal Sav. and Loan Assoc. v. United States*, 256 F.Supp. 538, 540 (E.D.Penn.1966). "The patent purpose of these rules is to obviate, as much as possible, fraud, peculation and other such misconduct in connection with the cashing of these securities." *Id.* By not fully complying with the regulations, plaintiff failed to make the proper personal identification as required to redeem bonds.

■ Although plaintiff does not contend that it tried to establish documentary identification, plaintiff did require "Lederman" to show two forms of identification before being permitted to reexecute the bonds. "Lederman" presented an expired drivers license and social security card, neither of which could be considered proper forms of identification, especially to correct past derelictions.

■ In summary, plaintiff failed to comply with government regulations by redeeming previously executed bonds to

---

**4.** Bonds are redeemed when valued and "[p]ayment [is made] in cash, [by] a credit to the presenter's checking or savings, or share account with the agent, or [by] a check or similar instrument payable to his order." 31 C.F.R. § 321.13 (1979).

**563**

someone other than the person named on the bonds. The redeeming officer had been instructed by her superiors to simply guarantee the signature on the back of the bond redeemed. Ms. Mackey signed the bonds even though the presenter was not the named owner. Only after large withdrawals from "Lederman's" account did plaintiff insist that "Lederman" reexecute the bonds in Ms. Mackey's presence. Upon reexecution, plaintiff failed to fully comply with the identification guidelines. Looking at the circumstances relating to the redemption of the bonds as a whole, the court finds that plaintiff failed to comply with the pertinent regulations and did not exercise a proper standard of due care, therefore plaintiff was negligent in redeeming the "Lederman" bonds.

**B. Causation**

■ Plaintiff admits that it did not follow the letter of the regulations and guidelines but contends that even if it were negligent, the government would have sustained the loss. However, plaintiff's failure to properly instruct its employees as to bond redemption regulations proximately resulted in Ms. Mackey's redemption of improperly executed bonds from a person other than the named owner. Such an action, by itself, has been found to preclude recovery to an agent. *West Philadelphia Federal Sav. and Loan Assoc. v. United States*, 256 F.Supp. 538, 540 (E.D.Penn. 1966). Though plaintiff tried to effectuate a "cure" by reexecution in this case, the "cure" was only attempted after money had been withdrawn from "Lederman's" account, and even when reexecution was attempted, plaintiff again failed to comply with applicable regulations. In view of these and other examples previously discussed in which plaintiff failed to follow guidelines and regulations and exercise a standard of due care, the court has no difficulty in determining that plaintiff's negligence "resulted" in the loss on the bonds. Plaintiff may not ignore the Treasury Regulations "with impunity." *Id.*

**CONCLUSION**

From the foregoing facts and conclusions, plaintiff's motion for summary judgment is denied and defendant's cross motion for summary judgment is granted. The court directs the Clerk to enter judgment dismissing the complaint.